REVISED FEBRUARY 19, 2002

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 01-20334

FLEETWOOD ENTERPRISES, INC.,
FLEETWOOD HOMES OF MISSISSIPPI, INC.,
AND GEORGIA-PACIFIC CORPORATION

Plaintiffs-Appellees,

versus

WILLIAM P. GASKAMP, JR., individually, and
as next friends for William P. Gaskamp, III,
Derek S. Gaskamp and Brooke A. Gaskamp, Minors;
SHANNON GASKAMP,individually, and as next
friends for William P. Gaskamp III, Derek S.
Gascamp and Brooke A. Gaskamp, Minors

Defendants-Appellants.

--------------------

Appeal from the United States District Court
for the Southern District of Texas

--------------------
January 24, 2002

Before JOLLY, SMITH, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This appeal arises from a district court order compelling arbitration of all of the claims brought by plaintiffs in a Mississippi state court lawsuit. The plaintiffs-appellants, the

Gaskamps,[1] assert on appeal that the district court erred in compelling arbitration of the claims of the Gaskamp children because the children were not parties to the arbitration agreement between the Gaskamp parents and the defendants-appellees Fleetwood Enterprises, Inc. and Fleetwood Homes of Mississippi, Inc. (collectively, "Fleetwood"), and Georgia-Pacific Corp. ("Georgia-Pacific"). They also assert that the district court erred in compelling arbitration of the parents' claims because the arbitration agreement was procedurally unconscionable. We reverse in part and affirm in part.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 1997, the Gaskamp parents negotiated with a sales representative for Manufactured Bargains the purchase of a mobile home manufactured by Fleetwood. They made a down payment of $2,500 on the home, gave Manufactured Bargains some household items, and traded in their old mobile home; in exchange, Manufactured Bargains delivered and installed the new Fleetwood home on the Gaskamp parents' property. The Gaskamps moved into the new mobile home, and remained there while Manufactured Homes arranged for financing of the home. The following month, Manufactured Homes informed the Gaskamp parents that it had arranged financing for the mobile home through Bombardier Capital, Inc. ("Bombardier"). To obtain the

---

[1]Hereinafter, William P. Gaskamp, Jr. and Shannon Gaskamp are referred to, collectively, as "the Gaskamp parents;" William P. Gaskamp, III, Derek S. Gaskamp, and Brooke A. Gaskamp are referred to as "the Gaskamp children." All members of the Gaskamp family are collectively referred to as "the Gaskamps."

financing and keep the new home, the Gaskamp parents were asked to make an additional down payment of $12,500.00, and to sign some paperwork.  The Gaskamp parents signed documentation on two separate occasions, and made the payment.  The documents signed included an "Arbitration Provision."[2]

After moving into the Fleetwood home, the Gaskamps began experiencing health problems including throat and eye irritation, runny nose, and respiratory problems.  In September 1999, Brooke Gaskamp was hospitalized as a result of breathing difficulties. She received a diagnosis of reactive airway disease as a result of exposure to formaldehyde.  Two months later, the Texas Department of Health, Toxic Substances Division, tested the new mobile home, and found elevated levels of formaldehyde.  Shortly thereafter, the Gaskamps moved out of the mobile home.

---

[2]The Arbitration Provision provides, in relevant part:
"The parties to the Retail Installment Contract or Cash Sale Contract agree that any and all controversies or claims arising out of, or in any way relating to, the Retail Installment Contract or Cash Sale Contract or the negotiation, purchase, financing, installation, ownership, occupancy, habitation, manufacture, warranties (express or implied), repair or sale/disposition of the home which is the subject of the Retail Installment Contract or Cash Sale Contract, whether those claims arise from or concern contract, warranty, statutory, property or common law, will be settled solely by means of final and binding arbitration before a three-judge panel of the American Arbitration Association (AAA) in accordance with the rules and procedures of the AAA....
The parties agree that this Arbitration Provision inures to the benefit of, and is intended to be for the benefit of, the manufacturer of the home which is the subject of the Retail Installment Contract or Cash Sale Contract as fully as if the manufacturer was a signatory to the Retail Installment Contract or Cash Sale Contract.
The parties agree that this Arbitration Provision inures to the benefit of, and is intended to be for the benefit of, any lender or mortgagee (or assigns) who provides financing for the purchase of the home...
THE PARTIES KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL."

In June 2000, the Gaskamp parents brought suit in Mississippi state court against the manufacturer of the home, Fleetwood; the manufacturer of particle board contained in the home, Georgia Pacific; the seller, Manufactured Bargains; and the financing institution, Bombardier. The Gaskamp parents brought the suit individually and as next friends of the Gaskamp children, alleging a variety of claims for personal injuries resulting from the exposure to formaldehyde.[3]

In December 2000, two of the defendants in the Mississippi lawsuit, Fleetwood and Georgia-Pacific, filed a Complaint to Compel

---

[3]In summary, the claims listed in the complaint were as follows:

First, strict liability claims against Fleetwood, Georgia-Pacific, and Manufactured Bargains for defective design and manufacture of the home.

Second, claims for negligence in the design, manufacture, financing, and marketing of the home.

Third, claims for fraud, on the grounds that defendants knowingly and intentionally concealed the dangers of formaldehyde poisoning, in violation of statutory requirements.

Fourth, claims for intentional infliction of emotional distress, on the grounds that the defendants intentionally engaged in extreme and outrageous conduct that caused distress and damages to all the plaintiffs.

Fifth, claims for negligent misrepresentation, on the grounds that defendants supplied false information on which the plaintiffs relied in deciding to purchase and occupy the home, and that the defendants' withholding of the information about the formaldehyde caused injuries to the plaintiffs.

Sixth, claims for constructive fraud, in that the defendants made material misrepresentations that the home was habitable.

Seventh, claims for trespass to realty, on the grounds that defendants designed and constructed the home in a manner that permitted the invasion of unacceptably high levels of formaldehyde into the Gaskamps' property.

Eighth, claims for negligence under the theory of res ipsa loquitur, on the basis that the presence of formaldehyde in the home is not the sort of event that occurs in the absence of negligence.

Ninth, a claim for misrepresentation, on the grounds that the defendants materially misrepresented the character and quality of the home as fit for human habitation via advertising and labeling, thereby causing injuries to the plaintiffs.

Tenth, plaintiffs allege that various defendants are responsible for additional torts such as negligent testing, liability to third persons for negligent performance of an undertaking, misrepresentation and false advertising, and "violations of the Restatement of Torts, Sec. 324A."

Arbitration against the Gaskamps in the United States District Court for the Southern District of Texas. The Gaskamps responded with a motion to dismiss. The Gaskamp parents subsequently settled their claims against Bombardier in the Mississippi state court lawsuit, and filed a motion to dismiss all of their individual claims in the Mississippi state court lawsuit in February 2001.

After the Gaskamps' settlement with Bombardier, Fleetwood and Georgia-Pacific filed a Motion to Compel Arbitration and for Expedited Hearing. On February 20, 2001, the district court ordered all of the Gaskamps' claims to arbitration, and stayed all proceedings in both the district court and the Mississippi state court (including the hearing on the Motion to Dismiss the claims of the Gaskamp parents). In its Order Compelling Arbitration and Staying State and Federal Cases, the district court explained, without citing authority, that the children must arbitrate with their parents because "[u]nlike a guest who happened to be in a mobile home when he was hurt, the children are permanent residents whose presence and use is wholly derivative of the parents' use of the mobile home."

On appeal, the Gaskamps make two main arguments. First, they assert that the district court erred in compelling arbitration of the Gaskamp children's claims because they were not parties to the arbitration agreement or third-party beneficiaries thereof.

5

Second, they argue that the arbitration provision is procedurally unconscionable.

### DISCUSSION

I. Standard of Review and Applicable Law

This Court reviews de novo the grant or denial of a motion to compel arbitration. *See Webb v. Investacorp*, 89 F.3d 252, 257(5th Cir. 1996). In adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts begin by determining whether the parties agreed to arbitrate the dispute. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353-54 (1985); *Folse v. Richard Wolf Medical Instruments Corp.,* 56 F.3d 603, 605 (5th Cir. 1995). This determination is generally made on the basis of "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924 (1995). Next, the Court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. at 3355; *see also Folse,* 56 F.3d at 605. In the present case, the

parties agree that Texas state law governs matters that are not addressed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.[4]

II.  The Claims of the Gaskamp Children

As stated earlier, the first step in evaluating a motion to compel arbitration is to determine whether the parties agreed to arbitrate.  This determination depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.  *Webb*, 89 F.3d at 258.  In determining whether the dispute falls within the scope of the arbitration agreement, "ambiguities... [are] resolved in favor of arbitration."  *Volt Info. Serv., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989).  However, this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead "[o]rdinary contract principles determine who is bound."  *Daisy Mfg. Co., Inc., v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994); *see also Volt* Info., 489 U.S. at 478 ("[T]he FAA does not require parties to arbitrate when they have

---

[4] In addition, under Texas choice of law rules "the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." *Duncan v. Cessna Aircraft,* 665 S.W.2d 414, 421 (Tex. 1984). In the present case, the state with the most significant relationship to the arbitration clause is Texas.  The Gaskamp parents purchased the home in Texas and signed the sale contract and arbitration clause in Texas, and the arbitration clause itself provides that Harris County, Texas, is the forum.

7

not agreed to do so."); *EEOC v. Waffle House*, 2002 U.S. LEXIS 489, at *24-*25 (U.S. Jan 15, 2002)(citations omitted)("Because the FAA is 'at bottom a policy guaranteeing the enforcement of private contractual arrangements,'... we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals....  It goes without saying that a contract cannot bind a nonparty."); *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir. 1994)("The federal policy [favoring arbitration], however, does not extend to situations in which the identity of the parties who have agreed to arbitrate is unclear.").[5]

In the present case, the parties agree that the dispute in question, i.e. the set of claims for personal injury resulting from use of the mobile home, falls within the scope of the arbitration agreement, which is very broad.  However, the parties disagree with regard to the first consideration, namely, whether there is a valid agreement to arbitrate between the parties.  The Gaskamps argue that, although there is an arbitration agreement between the

---

[5] The federal policy favoring arbitration does not extend to a determination of who is bound because, as stated by the Supreme Court, the purpose of the Federal Arbitration Act is "to make arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12, 87 S.Ct. 1801, 1806 (1967); *see also Mitsubishi Motors Corp v. Soler Chrysler Plymouth*, 473 U.S. 614, 625-26, 105 S.Ct. 3346, 3353(1985)(citation omitted)("The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered.").

Gaskamp parents and the appellees,[6] there is no such agreement between the Gaskamp children and the appellees. The issue in this case is, then, not what claims are arbitrable, but rather who must arbitrate. We apply Texas law to determine whether the Gaskamp children are required to arbitrate.

The Gaskamp children did not personally sign the arbitration agreement, and there is no provision in the agreement expressly stating that the Gaskamp parents, on behalf of their children, agreed to submit the children's claims to arbitration. Nonetheless, the appellees argue that because the Gaskamp children are minors, their parents were empowered to make decisions of substantial legal significance concerning the minors. Additionally, the appellees contend that under Texas law, non-signatory family members who bring claims intertwined with a signatory family member's claims are bound to arbitrate. Because the Gaskamp children are minors and because they joined their parents in the Mississippi state court suit, appellees argue, the arbitration agreement should be considered binding on the Gaskamp children.

---

[6]It is not entirely clear whether the arbitration agreement covers Georgia-Pacific. The agreement states that it "inures to the benefit of the manufacturer" but is not clear on whether it covers manufacturers of component parts of the mobile home. However, because the Gaskamps have not raised the issue of whether Georgia-Pacific is protected by the agreement, they have waived it. *See Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 561 (5th Cir. 1997).

9

To determine whether the Gaskamp children are bound by the arbitration agreement under Texas contract law, we apply the law as interpreted by the state's highest court, in this case, the Texas Supreme Court. *See Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272, 274 (5th Cir. 1991). Texas courts have found non-signatories bound to arbitration agreements in only two situations: first, where the non-signatory sued on the contract; and second, where the non-signatory was a third-party beneficiary of the contract. The present case does not fit either model.

In *In re First Merit Bank,* 52 S.W.3d 749 (Tex. 2001), the Texas Supreme Court held that the owners of a mobile home, who had received the home as a gift from their parents and were non-signatories to the arbitration agreement between the seller and the parents, were bound by the agreement. The Court specifically grounded its decision on the fact that the donees had sued on the basis of the contract: "a litigant who sues based on a contract subjects him or herself to the contract's terms. Here, the Alvarezes fully joined the de los Santoses' contract claims... Thus, by suing FirstMerit based on the de los Santoses' installment contract, the Alvarezes subjected themselves to the contract's terms, including the Arbitration Addendum." *Id.* at 755-56. Indeed, the claims made by the Alvarezes and de los Santoses in *First Merit Bank* included traditional contract claims: breach of contract, revocation of acceptance, and breach of warranty. In

10

*Southwest Tex. Pathology Assocs., L.L.P. v. Roosth*, an intermediate appellate court refused to bind a nonsignatory wife to arbitration of claims against her husband's employer, even though the husband's claims were subject to arbitration. 27 S.W.3d 204, 208 (Tex. App. San Antonio 2000)("[A] nonsignatory can only be bound by the terms of an arbitration provision in an agreement if the nonsignatory is asserting claims that require reliance on the terms of the written agreement containing the arbitration provision.").[7] In the present case, while the Gaskamp children fully joined the Gaskamp parents' claims in the Mississippi state court lawsuit, these claims were not contractual, but rather tort claims. At no point have the Gaskamp children attempted to enforce the contract, or sue on the basis of any warranties contained in the contract; the Gaskamps' complaint in state court does not rely at all on the terms of any agreement with the state court defendants. Thus, it cannot be said that the children sued on the contract, thereby subjecting themselves to the arbitration agreement.

Intermediate appellate courts in Texas have also held that non-signatories are bound by arbitration agreements where the non-

---

[7]There are additional cases in which wives were found not to be bound by arbitration agreements signed by their husbands. In *In re Conseco Fin. Corp.*, 19 S.W.3d 562 (Tex. App. Waco 2000), the court held that in the absence of a theory that would bind a non-signatory wife to her husband's contract, she could not be bound to arbitrate. And in another case, a court held that a wife was not required to arbitrate her claim for loss of consortium even though it was derivative of the wrongful termination claim of her husband, who was subject to arbitration under his employment contract. *See Merrill Lynch, Pierce, Fenner, and Smith, Inc. v. Longoria*, 783 S.W.2d 229, 231 (Tex. App. Corpus Christi 1990).

11

signatories are third-party beneficiaries of the contracts. *See In re Rangel*, 45 S.W.3d 783, 787 (Tex. App. Waco, 2001); *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 520 (Tex. App. Austin 1998). Under Texas law, parties are presumed to be contracting for themselves only; as stated by the Texas Supreme Court, "[a] court will not create a third-party beneficiary contract by implication.... The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.,* 995 S.W.2d 7647, 651 (Tex. 1999); *see also MJR Corp. v. B&B Vending Co.*, 760 S.W.2d 4, 12 (Tex. App. Dallas 1988). Thus, "the fact that a person is directly affected by the parties' conduct, or that he 'may have a substantial interest in a contract's enforcement, does not make him a third-party beneficiary.'" *Loyd v. Eco Resources, Inc.*, 956 S.W.2d 110, 134 (Tex. App. Houston (14th Dist.) 1997)(citing *Merrimack Mut. Fire Ins. Co. v. Allred Fairbanks Bank*, 678 S.W.2d 574, 577 (Tex. App. Houston (14th Dist.)). In other words, the intent to make someone a third-party beneficiary must be clearly written or evidenced in the contract. Otherwise, Texas will not recognize that person as a third-party beneficiary. In the present case, the contract does not mention the Gaskamp children at all and there is no indication in the contract that it is designed to benefit anyone other than the Gaskamp parents, who

12

purchased the home.  Any intention to confer a direct benefit on the children is far from being "clearly and fully spelled out." And the fact that the children lived in the home for some period of time renders them only incidental beneficiaries, not third-party beneficiaries.  Thus, the Gaskamp children are not third-party beneficiaries of their parents' contract under Texas law.

The parties have not explicitly asserted any additional basis on which a non-signatory could be bound to arbitrate.  The only potential argument at which the appellees hinted is that the fact that the Gaskamp children are minors somehow binds them to their parents' agreements to arbitrate.  However, there is no basis in existing Texas law for such an argument, and we should not create such a rule in this case.  When the state's highest court has not yet spoken on an issue, as in this case, we must determine, to the best of our ability, how that court would rule if the issue were before it.  *See Ladue*, 920 F.2d at 274.  There is no reason to think that the Texas Supreme Court would adopt a rule requiring non-signatory children to arbitrate on the basis of their parents' arbitration agreement in the absence of third-party beneficiary status or an attempt by the child to enforce the contract.  To the contrary, several indicators suggest that the Texas Supreme Court would refuse to adopt such a rule.  First, the language of Texas decisions that have addressed the question of when non-signatories are bound to arbitrate is restrictive: the decisions do not even

13

mention the possibility of additional bases for binding non-signatories to arbitration. Second, other jurisdictions that have addressed the question of when non-signatories are bound have only gone a little further than Texas, holding that there are five theories under "common law principles of contract and agency law" that provide a basis "for binding nonsignatories to arbitration agreements: 1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel." *Thomson-CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995). *See also Bel-Ray Co. v. Chemrite (Pty) Ltd.,* 181 F.3d 435, 440-43 (3d Cir. 1999); *International Paper Co. v. Schwabedissen Maschinen & Anlagen*, 206 F.3d 411, 417 (4th Cir. 2000); *Amoco Transport Co. v. Bugsier Reederei & Bergungs, A.G. (In re Oil Spill by the "Amoco Cadiz" )*, 659 F.2d 789, 795-96 (7th Cir. 1981); *McCarthy v. Azure,* 22 F.3d 351, 356 (1st Cir. 1994); *In re Hydro-Action, Inc.*, 266 B.R. 638, 645 (U.S. Bankruptcy Court, E.D. Tex. 2001). None of these theories would require children to arbitrate simply because they are minors and their claims are related to those of their parents. If the Texas Supreme Court were to add to the circumstances Texas has recognized so far for binding non-signatories, it is unlikely that it would go beyond the theories listed above. Finally, even outside the context of arbitration agreements, Texas law does not ordinarily bind children to the contracts their parents sign. *See, e.g., Stern v. Wonzer,* 846

14

S.W.2d 939, 944 (Tex. App. Houston (1st Dist.)1993)(holding that parents' contract with a law firm for legal representation did not bind their child with respect to her claims arising from the same incident, and noting that "there is a distinction between having authority to contract for legal representation of a child and actually exercising that authority."). In sum, because the Gaskamp children are not signatories to the sales contract, are not third-party beneficiaries of the agreement or contract, and are not suing on the basis of the contract, they are not bound by the arbitration agreement signed by their parents.

III. Procedural Unconscionability

The Gaskamps raise a defense to arbitration, arguing that the arbitration provision is procedurally unconscionable. The Gaskamps argue that Paul and Shannon Gaskamp were improperly told that the arbitration agreement was "standard documentation" that they were required to sign to keep living in the home. Consequently, they claim that they were given no meaningful choice as to acceptance of the arbitration agreement. Moreover, they assert that no explanation of the document was given to them, and that they did not have an opportunity to read or negotiate the agreement's terms. They also point out that they were unsophisticated with respect to business and legal matters, whereas the appellees are very experienced in contract negotiations. Thus, the Gaskamps argue, there is evidence of Manufactured Bargains' "overreaching or sharp

practices combined with the buyer's ignorance or inexperience," which make the arbitration agreement procedurally unconscionable. *American Stone Diamond, Inc. v. Lloyds of London*, 934 F.Supp. 839, 844 (S.D. Tex. 1996).

The party contesting the contractual arbitration provision has the burden to show procedural unconscionability. *Smith v. H.E. Butt Grocery Co.*, 18 S.W.3d 910, 912 (Tex.App. Beaumont 2000, pet. denied) (citing *In re Oakwood Mobile Homes*, 987 S.W.2d 571, 573 (Tex. 1999)). The Gaskamps have not met their burden here. The only evidence the Gaskamps have presented is in the form of their allegations of misrepresentations and pressure to sign the documents quickly. Such allegations are insufficient to establish unconscionability. And while there may be imbalance in the relative sophistication of the parties, this imbalance is insufficient on its own to render the agreement unconscionable. *See Rangel*, 45 S.W.3d 783 (Tex. App. Waco 2001) (holding that an agreement was not unconscionable even though one of the parties had never attended school, was 75, hard of hearing, and had difficulty reading). The only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement. *See In re Turner Bros. Trucking Co.,* 8 S.W.3d 370 (Tex. App. Texarkana 1999)(finding an agreement was procedurally unconscionable where one of the parties was functionally

16

illiterate, nobody explained the agreement to him, and the person who gave him the agreement to sign did not understand the agreement); *Prevot v. Phillips Petroleum Co.*, 133 F.Supp.2d 937 (S.D. Tex. 2001)(finding procedural unconscionability where the plaintiffs did not speak English and the agreement was not translated or explained to them).

## CONCLUSION

The Arbitration Provision was not procedurally unconscionable and the Gaskamp parents have not raised any valid defenses to arbitration of their own claims, so as signatories they are bound to arbitrate all of their claims for fraud and negligence. However, because the Gaskamp children are not signatories to the contract or third-party beneficiaries thereof, and because they have not sought to enforce the contract, the children cannot be required to arbitrate. The district court's order compelling arbitration and staying state and federal cases is therefore REVERSED with regard to the Gaskamp children's claims, and AFFIRMED with regard to the claims of the Gaskamp parents.