**AMSOUTH BANK Plaintiff**

v.

**Elizabeth M. STEADMAN Defendant**

**No. CIV.A.4:04 CV 85LN.**

United States District Court,
S.D. Mississippi,
Eastern Division.

Oct. 12, 2004.

Emerson Barney Robinson, III, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Plaintiff.

*MEMORANDUM OPINION
AND ORDER*

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of plaintiff AmSouth Bank to compel arbitration. Defendant Elizabeth Steadman has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

AmSouth filed the present action to compel arbitration after being sued by Steadman for alleged wrongs relating to the redemption of a certain certificate of deposit that Steadman had pledged as security for a loan from AmSouth to Wanda Steadman, defendant's daughter-in-law.[1]

peal] [leaves] him as badly off as if he had appealed and lost").

1. Steadman alleges that AmSouth would only agree to make the loan to Wanda if she would pledge her certificate of deposit as security for

the loan. She alleges that AmSouth informed her that in order to pledge the CD as security for Wanda's loan, she would have to change the CD from sole to joint ownership with Wanda, which she did. Thereafter, on July

AmSouth contends that Steadman has contractually obligated herself to arbitrate, not litigate, her claims in the underlying action, and seeks a summary adjudication to that effect.

In support of its motion, AmSouth submits that Steadman is bound to arbitrate her claims against it pursuant to either or both of two arbitration provisions. Specifically, AmSouth points out that in August 2000, Steadman opened a personal checking account with AmSouth which is governed by an account agreement that includes an arbitration clause providing, in part, as follows:

> **ARBITRATION:** Any controversy, claim, or dispute between us (or between you and any of our employees, agents, representatives, parent or affiliated companies, or any of their employees) shall be settled by arbitration as set forth below. Such arbitration shall include, without limitations, any dispute or controversy regarding or pertaining in any way to any of the following: (a) this Agreement; (b) the account; (c) any charge or cost incurred under this Agreement or the Account; (d) the collection of any amounts due under this

Agreement or the Account; (e) any contract or alleged tort related to or arising out of your business or relationship with us; and (f) any statements or representations made to you.[2] Any arbitration under this Agreement shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA Rules"). Any disagreement as to whether a particular dispute or claim is subject to arbitration under this paragraph shall be decided by arbitration in accordance with the provisions of this paragraph.

Subsequently, AmSouth undertook to amend portions of the account agreement, including the arbitration agreement, in the spring of 2004. The amended agreement, which became effective March 1, 2004, covered not only depository accounts, but all types of accounts, including CDs, and the arbitration provision, in particular, specifically recited that it applied "to all of the above referenced types of accounts and agreements," and broadly provided for arbitration of

> [a]ny controversy, claim, dispute or disagreement ... arising out of, in connec-

11, 2001, Wanda cashed the CD to pay off the balance of the loan, and pocketed the balance, all without Steadman's knowledge or permission. She thus has sued Wanda for conversion, and has sued AmSouth for breach of its alleged duty to explain her options with regard to her CD and the implications of the documents it presented to her for signing, for misrepresenting that she had to convert the CD to joint ownership in order to pledge it for Wanda's loan and for bad faith breach of contract. On November 12, 2003, Steadman gave notice to AmSouth of her claim and she filed her lawsuit on March 17, 2004.

**2.** The account agreement also provided that "when you open your account, by conducting any transaction involving your account, or by maintaining your account after receipt of this agreement, you agree to the terms in this agreement." The evidence reflects that

Steadman signed a signature card on the account, which recited, as is pertinent here,

> By signing below, I ... (a) agree to be bound by the terms of the Bank's customer agreement rules and regulations, and pricing schedule, as now in force and as amended from time to time hereafter, related to each account or service listed below; (b) acknowledge receipt of a copy of the applicable customer agreement and pricing schedule now in effect; (c) promise that all information on this form is true.

Thus, although Steadman's response memorandum states that the customer agreement then in effect "may or may not have been provided to the Defendant at the time she opened her personal checking account in 2000," the evidence establishes that she, in fact, was provided a copy of the agreement containing the arbitration provision.

tion with or relating to (1) the interpretation, execution, administration or modification of the Agreement; (2) any account; (3) any charge or cost incurred or any amounts due pursuant to the Agreement; (4) the collection of any amounts due under the Agreement or any account; (5) any alleged tort arising out of or relating in any way to the Agreement or any account; (6) any breach of any provision of the Agreement; (7) any statements or representations made to you with respect to the Agreement or any account; or (8) any of the foregoing arising out of, in connection with or relating to any agreement which relates to the Agreement or any account.

Steadman obviously denies that she is bound to arbitrate her claims against AmSouth in the underlying litigation, as she makes clear in her response to AmSouth's motion. In her response, Steadman first points out that the agreement or contract she signed on March 5, 1999, relating only to the CD that is the subject of her litigation against AmSouth, contains no provision for arbitration. She admits that the customer agreement governing her checking account contains an arbitration provision, but she insists that the arbitration clause in the customer agreement applicable to her checking account cannot be found to apply to disputes relating to her CD inasmuch as the customer agreement on that account states plainly that the agreement "covers the use of any type of depository account you have with us, both personal and nonpersonal, *except for* time deposits, *certificates of deposit,* and IRAs," (emphasis added), and also because she

was never made aware of that provision. As for the arbitration provision that AmSouth contends became part of her account agreement on March 1, 2004, Steadman first argues that AmSouth has failed to present any proof as to the effective date of that putative arbitration agreement or of its mailing of the amendment to the account agreement adding the arbitration provision. She argues further that the agreement could not in any event rightly be held to apply to her dispute with AmSouth inasmuch as the dispute had arisen and AmSouth had been given specific written notice of plaintiff's claims and her intent to pursue AmSouth on the claims months prior to AmSouth's attempted insertion of the arbitration provision into her account agreement.

The court is skeptical of the proposition that Steadman is required to arbitrate her claims based on the 2004 amendment to her account agreement, for it is undisputed that months before the amended agreement was sent out to customers, Steadman had already notified AmSouth by letter not only of her dispute but of her intent to pursue her claim against it through litigation. This is especially relevant in light of a provision in the 2004 version of the account agreement relating to arbitration that permitted customers to reject the arbitration provision by notifying AmSouth in writing.[3] However, this is an issue that need not be resolved in light of the arbitration provision in the 2000 account agreement applicable to Steadman's checking.

██ In evaluating a motion to compel arbitration, the first step is to determine whether the parties agreed to arbitrate.

---

**3.** The provision recited:

You may reject this agreement to arbitrate by sending a letter to us at the following address:

AmSouth Bank
Office of General Counsel

315 Deaderick St.
Nashville, TN 37237–0721

To be effective, your letter must be received by us at the above address within thirty (30) days of the date you receive this Agreement.

"This determination depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.2002) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir.1996)). In the case at bar, it cannot reasonably be denied that the 2000 account agreement includes a valid agreement to arbitrate between the parties.[4] The only question is whether the present dispute is governed by that agreement.

 In this vein, the court observes that the language of the arbitration provision appears to cover her claims against AmSouth in the underlying litigation. The court recognizes that the account agreement, by its terms, purports to apply only to depository accounts and not to certificates of deposit; yet the arbitration provision is broadly written to cover "any dispute or controversy regarding or pertaining in any way" not only to the agreement or the specific account, but also to "any contract or alleged tort related to or arising out of your business or relationship with us."

Perhaps more pertinently, however, the arbitration provision in Steadman's original account agreement expressly and unambiguously provides for decision by the arbitrator on the question whether a particular dispute or claim is subject to arbitration. The Supreme Court has held that the question of arbitrability, i.e., whether parties agreed to arbitrate the merits of a particular dispute, is for the court to decide, absent clear and unmistakable evidence that the parties agreed to arbitrate the question of arbitrability. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *see also Will–Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 217 (5th cir.2003) (interpreting and applying *First Options*). The court must therefore conclude that AmSouth's motion to compel arbitration is due to be granted.

Accordingly, it is ordered that AmSouth's motion to compel arbitration is granted.

---

4. Steadman suggests that the arbitration agreement is procedurally unconscionable and hence unenforceable because it was never specifically brought to her attention. However, AmSouth had no duty to specifically inform her that the account agreement included an arbitration provision, and the provision itself is easily discernable in the agreement which was provided to Steadman.