899 So.2d 57 (2005)
Courtney SNYDER & Doug Johnson
v.
BELMONT HOMES, INC., and Bayou State Mobile Homes, Inc.
No. 2004 CA 0445.
Court of Appeal of Louisiana, First Circuit.
February 16, 2005.
Rehearing Denied March 23, 2005.
*59 Richard C. Dalton, Lafayette, Christopher L. Whittington, Baton Rouge, Counsel for Plaintiffs/Appellees Courtney Snyder & Doug Johnson.
John P. Wolff, III, Kyle A. Ferachi, Baton Rouge, Counsel for Defendant/Appellant Belmont Homes, Inc.
Larry D. Book, Baton Rouge, Counsel for Defendant/Appellee Bayou State Mobile Homes, Inc.
Before: WHIPPLE, DOWNING and HUGHES, JJ.
DOWNING, J.
This matter arises from a suit filed by the purchasers of a mobile home against the seller and manufacturer. Plaintiffs allege contract, tort and redhibition damages. Defendants filed a dilatory exception of prematurity on the basis of plaintiff's failure to submit to alternative dispute resolution pursuant to an agreement signed at the time of purchase. Only one of the plaintiffs signed the agreement. Judgment was entered denying the exception; from that judgment defendants appeal. For the following reasons, we reverse in part, remand in part, amend in part and as amended, affirm.

FACTS AND PROCEDURAL HISTORY
The petition avers that Doug Johnson and Courtney Snyder bought a mobile home on March 8, 2002 that was manufactured by Belmont Homes, Inc.[1] Johnson and Snyder were not married at the time of the sale,[2] and only Johnson signed the *60 purchase agreement. The document included a provision for arbitration and waiver of jury trial. The provision states in pertinent part that "any dispute, controversy or claim of any kind or nature which has arisen or may arise between the parties, their successors, assigns, heirs, representatives, parent companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents, and contractors (including any dispute, controversy or claim relating the validity of this arbitration clause), whether arising out of past, present or future dealings between the parties ... shall be governed by the Federal Arbitration Act and shall be settled by arbitration." The agreement also states that Mississippi law applies.
Shortly after purchase, plaintiffs discovered that the mobile home leaked. Defendants attempted to repair the leaks, but did not do so to plaintiffs' satisfaction. Snyder and Johnson filed suit on October 18, 2002 alleging that the mobile home was defective, claiming redhibitory conditions. Plaintiffs also alleged that defendants were liable for breach of warranty (both implied and express) as well as negligent misrepresentation and unfair trade practices.
Nearly one year later, on August 21, 2003, plaintiffs filed a supplemental petition adding a claim for personal injuries on behalf of themselves and on behalf of their newborn child. The damages alleged were attributed to the recently discovered toxic mold that developed in the mobile home due to its alleged defective condition.
Belmont Homes filed an exception of prematurity alleging that the matter must be mediated and if that fails, then binding arbitration must be pursued, as set forth in the applicable agreement. The trial court denied the exception and defendant appealed.[3] The sole assignment of error alleges that the trial court erred in failing to sustain the exception, thus allowing plaintiffs to proceed with no regard to the arbitration agreement.
The wording of the agreement signed by Johnson clearly states that any dispute, controversy or claim of any kind or nature that may arise shall be settled by arbitration. (Emphasis added.)

DISCUSSION
The determination of whether to compel arbitration is a question of law. Dufrene v. HBOS Manufacturing, LP, 03-2201, p. 2 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, 1209. Appellate review of questions of law is simply to determine whether the trial court was legally correct or incorrect. Cangelosi v. Allstate Ins. Co., 96-0159, p. 3, 680 So.2d at 1360.
The Louisiana Arbitration Law (LAL) is set forth in LSA-R.S. 9:4201 through 4217. Louisiana courts look to federal law in interpreting the act because it is virtually identical to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16. Dufrene, 03-2201, p. 3 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, 1209-10.
Louisiana Revised Statute 9:4201 sets forth the following:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract ... or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at *61 law or in equity for the revocation of any contract.

Doug Johnson's Claims
It is undisputed that Johnson signed the agreement in question. There is a strong public policy in both the LAL and the FAA favoring the enforcement of arbitration agreements. Shroyer v. Foster, 01-0385 p. 5 (La.App. 1 Cir. 3/28/02), 814 So.2d 83, 87. Therefore, all of Johnson's contractual claims, including the breach of warranty claims, must be arbitrated pursuant to the agreement.
Redhibition is technically not a contractual cause of action, but it still arises from a breach of a contractual duty. "But for" Belmont's failure to repair the leaks in the mobile home, the redhibition claims would not have arisen. It would contravene the purposes of the Arbitration Act to allow a plaintiff to seek redress pursuant to the agreement, but not to be bound by one of the agreement's provisions. It is only logical that claims arising from defects in the mobile home would have been anticipated when the agreement was signed. This encompasses redhibition claims. See Dufrene, 03-2201, 872 So.2d 1206. A presumption of arbitrability exists and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Id. The weight of this presumption is heavy. Id. There is no showing that Johnson provided any evidence to rebut the presumption.
Accordingly, pursuant to La. R.S. 9:4201 all claims arising from the contract between Johnson and Belmont shall be resolved through arbitration. The trial court erred in overruling defendant's exception of prematurity as it relates to Johnson's claims appearing in the original petition, all of which arise out of the contract agreement. That portion of the judgment is reversed, and all contractual and redhibition claims must be arbitrated.
Johnson's tort claims are more problematic. The purpose of the FAA is to give arbitration agreements the same force as other contracts  no more and no less. Washington Mutual Finance Group, LLC v. Bailey, 364 F.3d 260, 264 (5th Cir.2004). See also Pennzoil Exploration and Production Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1064 (5th Cir.1998). The question then becomes whether the personal injury claims fall within the arbitration agreement. Even if Louisiana favors arbitration, the dispute resolution clause will not be enforced unless the meaning is reasonably clear and ascertainable. Chevron Phillips Chemical Co. v. Sulzer Chemtech USA, Inc., 02-598, 02-628, p. 4, (La.App. 5 Cir. 10/29/02), 831 So.2d 474, 476. Whether a tort claim must be arbitrated depends on whether or not it was contemplated by the parties when the agreement was signed, since arbitration is a matter of contract between the parties. Washington Mutual, 364 F.3d at 264.
In determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement. Id. Under Mississippi law courts have consistently held that parties have an affirmative duty to read the contract and are charged with knowing the contents of any document executed. Id.
Thus, the first step in evaluating whether arbitration must be compelled is to determine whether the parties agreed to arbitrate. Fleetwood Enterprises, Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir.2002). This determination depends on two considerations: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that arbitration *62 agreement. Id. The policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties. Id. Rather, ordinary contract principles determine who is bound. Id.
Further, in construing an arbitration agreement under the FAA, a determination of whether a dispute falls within an arbitration clause requires the court to characterize the clause as "broad" or "narrow." See Hornbeck Offshore Corp. v. Coastal Carriers Corp., 981 F.2d 752, 754-55 (5th Cir.1993). If the court finds that the clause is broad, then any dispute between the parties falls within the scope of the clause if it is connected with or related to the contract. Id. A narrow clause restricts and requires that the dispute literally "arise out of the contract" and relate to the parties performance of the contract. Pennzoil, 139 F.3d at 1067. The main difference between these two distinctions is that a broad clause considers the facts underpinning the dispute and allows the arbitration agreement to embrace all disputes between the parties that have a "significant relationship to the contract regardless of the label attached to the dispute." Id.
The provision signed by Johnson is broadly defined. The provision clearly states that any dispute, controversy or claim of any kind or nature that may arise shall be settled by arbitration. The provision further states that it is the intention of the parties to resolve by binding arbitration, as provided herein, all past, present, and future disputes, whether in tort, contract or otherwise, concerning or related to the manufactured home.
The question then becomes, do the personal injuries resulting from the toxic mold due to the negligent manufacture and negligent repair come under the umbrella of "a dispute, controversy or claim of any kind or nature arising between the parties."
There appear to be no Louisiana cases directly on point, but many have been decided in other jurisdictions. In California for example, an appellate court held that arbitration agreements applied to pending tort actions when the tort liability "had its roots" in the sales agreement containing the arbitration clause. Izzi v. Mesquite Country Club, 186 Cal.App.3d 1309, 231 Cal.Rptr. 315 (1986). The Izzi court reasoned that since the contract provided arbitration for "any controversy arising out of or relating to a contract," such agreements are sufficiently broad to include tort claims, so long as the roots of these claims were created by the contract. Id.
We realize that the claims for personal injuries incurred by the alleged toxic mold did not arise specifically out of the contract, manifested subsequent to the signing of the contract, and did not exist at the time of the signing. However, Louisiana has long expressed a strong public policy in favor of arbitration. Integrity Flooring, LLC v. Mid South Contractors, LLC, 02-2636, p. 4 (La.App. 1 Cir. 9/26/03), 857 So.2d 582, 585. The wording of this particular agreement clearly states that any and all claims of any nature, contract or tort, will be settled by arbitration. "But for" the defects in the product resulting in the mold, Johnson would have no tort claim against defendants for toxic mold. Therefore, this clause is sufficiently broad and sufficiently clear to include this toxic mold tort claim.
Further, numerous courts have found that when a party seeks to enforce the provisions of a contract, that party must accept all of the terms of the contract. Shroyer, 01-0385, p. 9, 814 So.2d at 89. The party cannot have it both ways; *63 he cannot rely on the contract when it works to his advantage and then repudiate it when it works to his disadvantage. Id. A party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that it was not properly explained to him. Dufrene, 03-2201, p. 2, 872 So.2d at 1213, (on rehearing).
We therefore conclude that Johnson's tort claims here relate back to the agreement and he is bound to arbitration. This result is consistent with prior rulings from this court as well as jurisprudence from other jurisdictions. Accordingly, the trial court erred in denying the dilatory exception of prematurity with respect to all claims asserted by Johnson. That portion of the judgment is hereby reversed.

Courtney Snyder's Claims
Snyder's petition alleges that she has suffered contractual damages. The purchase agreement in evidence, however, only has Doug Johnson's signature listed as the buyer. There is no evidence in the record of any contractual relationship between Courtney Snyder and defendants. The record is devoid of any title, bill of sale, or any other document evidencing her signature. Nor is there any evidence of community property rights since the couple was not married at the time of purchase. See Shroyer, 01-0385, p. 9, 814 So.2d at 89, n. 6. We therefore notice, pursuant to our authority under LSA-C.C.P. art. 927(B) that Snyder failed to disclose a right of action or interest to institute this suit. An action can be brought only by a person having a real and actual interest which he asserts. LSA-C.C.P. art. 681. We have reviewed the record and find that there is no documentation or evidence showing that Snyder has any real and actual interest in bringing this suit on the contractual allegations.
If Snyder can show the contrary, she has thirty days from the date this opinion becomes final to amend the petition and to allege her right to relief in contract or redhibition. LSA-C.C.P. art. 934. Upon failure to amend timely to demonstrate a right of action, the trial court shall dismiss Snyder's contractual claims.
Regarding the tort claims, a non-signatory can only be bound by the terms of an arbitration provision if the non-signatory is asserting claims that require reliance on the terms of the written agreement contained in the arbitration agreement. Fleetwood Enterprises, 280 F.3d at 1075. In this case, Snyder is alleging an action in products liability. Here, the plaintiffs were not married when Johnson purchased the mobile home. Johnson's name is the sole signature on the purchase agreement. Snyder's name does not appear on any document linking her to the mobile home or to the agreement to arbitrate.
In AT & T Technologies v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the U.S. Supreme Court established four precepts for determining whether a given dispute must be submitted to arbitration. The first and foremost precept is that arbitration is a matter of contract and a party cannot be required to arbitrate any dispute which he has not agreed so to submit. Billieson v. City of New Orleans, 02-1993, p. 6 (La.App. 4 Cir. 9/17/03), 863 So.2d 557, 561, writ denied, 04-0563 (La.4/23/04), 870 So.2d 303.
Defendants contend that Snyder's tort claims must also go to arbitration because she admitted under oath that she felt bound by the terms of the sale and therefore tacitly ratified the agreement.
*64 Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority. LSA-C.C. art. 1843. Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation. North American Specialty Insurance Company v. Employers Reinsurance Corporation, 02-2649, p. 4 (La.App. 1 Cir. 9/26/03), 857 So.2d 606, 609.
There is nothing in the record showing that Snyder had knowledge of the arbitration agreement. Nor is there any evidence that she was obligated under the contract, or the obligation was incurred on her behalf, or that she benefited in anyway from that agreement. We are therefore in agreement with the trial court's conclusion that Snyder cannot be bound to arbitrate based on a contract which she did not sign when there is no evidence she knew about the agreement, was obligated by it, that it was incurred on her behalf, or that she benefited from it. It should be obvious without citation, that a party cannot create title in herself by judicial confession, where there is no legal basis for her title.

The Child's Claims
The petition makes no claim for any damages arising from the contract on behalf of the child. The trial court stated that any personal injuries these plaintiffs might have suffered were not subject to the arbitration agreement contained in the contract. We agree that there is no question that the child's personal injury claims are not subject to arbitration.
First, as we discussed above, any duty to arbitrate tort claims would arise out of the contractual obligation. Washington Mutual, 364 F.3d at 264. There has been no allegation or showing that the child has any form of contractual relationship with defendant. Accordingly, the child's tort claims are not subject to arbitration.
Further, even outside the context of arbitration agreements, Louisiana law does not ordinarily bind children to the contracts their parents sign. Tutors of minors cannot be bound to arbitration without court authorization. See LSA-C.C. art. 3101. There is no court authorization here. Therefore, a tort suit can be filed on Conner Johnson's behalf. This portion of the judgment is affirmed.

DECREE
For the reasons stated above, the trial court judgment is reversed in part, remanded in part with instructions, and affirmed in part as amended. Doug Johnson's claims must all be arbitrated. We remand to the trial court to allow Courtney Snyder to demonstrate a right of action to proceed on any contract claims. If she fails to adequately amend the petition, the contract and redhibition claims are to be dismissed. Based upon the record before us, Courtney Snyder's tort claims do not have to be arbitrated. Conner Johnson's claims do not have to be arbitrated. Costs of this proceeding are assessed against appellants, Belmont Homes, Inc.
REVERSED IN PART; REMANDED IN PART WITH INSTRUCTIONS; AFFIRMED IN PART AS AMENDED.
HUGHES, J., concurs with reasons.
HUGHES, J., concurs.
I concur. Absent evidence of fraud, the contract of arbitration is binding on Johnson.
NOTES
[1] Belmont Mobile Homes, a Division of Cavalier Enterprises, Inc., is the manufacturer, and Bayou State Mobile Homes, Inc. is the seller. Their exact relationship is not explained in the record.
[2] Johnson and Snyder married after the completion of the sale of the mobile home to Johnson.
[3] Defendants originally took writs. This Court denied the writ citing Shroyer v. Foster, 01-0385 p. 3 (La.App. 1 Cir. 3/28/02), 814 So.2d 83, 86, which stated that an order over-ruling an exception of prematurity which effectively denies arbitration is a final, appealable judgment.