NUMBER 13-07-00291-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


IN RE SSP PARTNERS D/B/A CIRCLE K AND JOSE ALMAGUER

 

 

On Petition for Writ of Mandamus


 


O P I N I O N



Before Chief Justice Valdez and Justices Rodriguez and Garza


Opinion by Chief Justice Valdez



 Relators, SSP Partners d/b/a Circle K and Josie Almaguer, petition this Court for a
writ of mandamus directing the respondent, the Honorable James E. Klager, presiding
judge of County Court at Law No. 4 of Nueces County, Texas, to order the minor plaintiffs
to arbitration. The issue in this case is whether Angela Garcia's agreement to arbitrate her
personal injury claims against her employer requires Garcia's minor children to arbitrate
their claims for loss of parental consortium. We conclude that relators have failed to
establish a valid agreement to arbitrate with the minor children, and, accordingly, we deny
the petition for writ of mandamus.

I. Background


 Angela Garcia was an employee of relator SSP Partners. While working at one of
SSP's convenience stores, Garcia was stabbed by a customer, Oscar Moreno. Garcia
alleged that the manager of the convenience store, Josie Almaguer, knew Moreno and
knew that he had a history of violence. 

 When she was employed by SSP, Garcia agreed to participate in the SSP Partners
Employee Injury Benefit Plan. SSP is a nonsubscriber under the Texas Workers'
Compensation Act and did not carry workers' compensation insurance. Instead, it
voluntarily established the Plan "to provide certain benefits for on-the-job injuries." 
According to the agreement, if Garcia is "injured on the job," she is "eligible under the
Plan's terms for the medical, disability, death, burial and dismemberment benefits
described in the Plan . . . ." The agreement includes an arbitration agreement:

 MUTUAL PROMISES TO RESOLVE CLAIMS BY BINDING ARBITRATION: 
I recognize that disputes may arise between the Company (or one of its
affiliates) and me during or after my employment with the Company. I
understand and agree that any and all such disputes that cannot first be
resolved through the Company's internal dispute resolution procedures or
mediation must be submitted to binding arbitration.


 I acknowledge and understand that by signing this Agreement I am giving up
the right to a jury trial on all of the claims covered by this Agreement in
exchange for eligibility for the Plan's medical, disability, dismemberment,
death and burial benefits and in anticipation of gaining the benefits of a
speedy, impartial, mutually-binding procedure for resolving disputes.


 This agreement to resolve claims by arbitration is mutually binding upon both
me and the Company (and its affiliates, including SSP Partners, SSP
Services, L.P., Applied Petroleum Technologies, Ltd., Susser Petroleum
Company, L.P., Susser Management Company, Susser Petroleum
Management Company, L.L.C., SSP Beverage, Inc., SSP Services
Management Company, L.L.C., S Interests, Inc., S Interests Management
Company, L.L.C., Susser Holdings, L.L.C., APT Interest, Inc., APT
Management Company, L.L.C., SSP Holdings Limited Partnership, Rusche
Properties I L.L.C., Rusche Management Company, SSP-MC, Inc. SSP
Management Company, SSP Properties, I, L.L.C., SSP Properties II, L.L.C.,
SSP Properties, III, L.L.C., SSP properties, IV, L.L.C., Susser Company,
Ltd., CASA Air, L.L.C., and 2000 Aviation, L.L.C.), and it binds and benefits
our successors, subsidiaries, assigns, beneficiaries, heirs, children, spouses,
parents and legal representatives.


 CLAIMS SUBJECT TO ARBITRATION: Claims and disputes covered by this
Agreement include:


 (a) all claims and disputes that I may now have or may in the future have
against the Company and/or against its successors, subsidiaries and
affiliates and/or any of their officers, directors, shareholders, partners,
owners, employees and agents, or against any Company employee
benefit plan (including the Plan) or the plan's administrators or
fiduciaries, and


 (b) all claims and disputes that the Company and/or its successors,
subsidiaries and affiliates and/or any of their officers, directors,
shareholders, partners, owners and any Company employee benefit
plans (including the Plan) may now have or may in the future have
against me, my spouse, children, heirs, parents and/or legal
representatives.


Following the stabbing, Garcia received medical benefits under the Plan. However, a
dispute arose regarding her benefits, and Garcia pursued arbitration on her individual
claims against Circle K for breach of its duty to provide a safe workplace. In that
arbitration, SSP sought to also arbitrate the claims of Garcia's minor children. Accordingly,
on March 29, 2006, Garcia initiated a lawsuit as next friend for Damien Garcia and Sarah
Garcia, her minor children. Through this lawsuit, Garcia brought the loss of parental
consortium claims of her minor children based on her bodily injury and sought a declaratory
judgment that the arbitration agreement was not binding on her minor children. She later
filed a separate suit based on her own claims. The two cases were consolidated. Relators
removed the matter to federal court, where it was remanded based on waiver and lack of
jurisdiction. (1) The trial court ultimately granted a motion to compel arbitration as to Garcia
and denied the motion as to the minor children. This original proceeding ensued. 

 Relators contend that: (1) respondent erred in reaching the "gateway matter" of
whether a valid arbitration agreement exists; and (2) respondent erred in failing to order
to arbitration the derivative loss of parental consortium claims of the minor children. In
contrast, real parties contend that: (1) forcing the minor children to arbitrate their claims
under these circumstances would violate the public policy of Texas; (2) no valid arbitration
agreement exists because it has been expressly disaffirmed by representatives of the
children; and (3) no valid enforceable agreement exists because the agreement and
actions taken by Circle K are unconstitutional and unconscionable. 

II. Arbitration


 A party seeking to compel arbitration by a writ of mandamus must establish the
existence of a valid agreement to arbitrate under the FAA and show that the claims in
dispute are within the scope of the agreement. In re Kellogg Brown & Root, Inc., 166
S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). In determining the validity of agreements
to arbitrate which are subject to the FAA, we generally apply state-law principles governing
the formation of contracts. In re Palm Harbor Homes, Inc., 195 S.W.3d 672, 676 (Tex.
2006) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Whether
a valid arbitration agreement exists is a legal question subject to de novo review. In re D.
Wilson Constr. Co., 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). If the trial court
finds there is a valid agreement to arbitrate, the burden shifts to the party opposing
arbitration to prove his defenses. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227
(Tex. 2003). 

 Once a valid agreement to arbitrate has been established, the court must then
determine whether the nonmovants' claims fall within the scope of the arbitration clause. 
In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753 (Tex. 2001). To determine whether an
existing arbitration agreement covers a party's claims, a court must "focus on the
complaint's factual allegations rather than the legal causes of action asserted." Id. at 754. 
Federal policy embodied in the FAA favors agreements to arbitrate and courts must resolve
any doubts about an arbitration agreement's scope in favor of arbitration. Id. at 753. But
those public policies favoring arbitration do not extend to any favorable inclination one way
or the other with regard to the question of who is bound by the arbitration agreement
because the purpose of the FAA is "to make arbitration agreements as enforceable as
other contracts, but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S.
395, 404 n.12 (1967); see In re Ghanem, 203 S.W.3d 896, 899 (Tex. App.-Beaumont
2006, orig. proceeding).

 If the arbitration agreement encompasses the claims and the party opposing
arbitration has failed to prove its defenses, the trial court has no discretion but to compel
arbitration and stay its own proceedings. Id. at 753-54; D.R. Horton, Inc. v. Brooks, 207
S.W.3d 862, 866-67 (Tex. App.-Houston [14th Dist.] 2006, no pet.); Feldman/Matz
Interests, L.L.P. v. Settlement Capital Corp., 140 S.W.3d 879, 883 (Tex. App.-Houston
[14th Dist.] 2004, no pet.).

III. Gateway Issue


 In their first issue, relators contend that the respondent erred in reaching the
"gateway matter" of whether a valid arbitration agreement exists because the election and
arbitration agreement provide "unmistakable evidence" that such issues are to be
arbitrated. Relators point to the following language in the agreement:

 [T]his agreement to resolve claims by arbitration is mutually binding upon
both me and the Company (and its affiliates, including . . .), and it binds and
benefits our successors, subsidiaries, assigns, beneficiaries, heirs, children,
spouses, parents, and legal representatives.


Relators point out that the election and arbitration agreement applies to claims against
SSP's "employees and agents." The election and arbitration agreement also expressly
provides that:

 The types of claims covered by this Agreement include, but are not limited
to, any and all . . .


 claims challenging the validity or enforceability of this Agreement (in whole
or in part) or challenging the applicability of this Agreement to a particular
dispute or claim.


 "Under the FAA, absent unmistakable evidence that the parties intended the
contrary, it is the courts rather than arbitrators that must decide 'gateway matters' such as
. . . [w]hether an arbitration agreement is binding on a nonparty . . . ." In re Weekley
Homes, L.P., 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). 

 We do not believe the cited provisions constitute "unmistakable evidence" that the
parties intended for an arbitrator to decide whether nonparties are bound by the arbitration
agreement, particularly in light of established Texas law placing the initial burden of proving
the existence of a valid arbitration agreement and claims within the scope of that
agreement on the party seeking to compel arbitration. See J.M. Davidson, Inc. v. Webster,
128 S.W.3d 223, 227 (Tex. 2003) (holding that "[a] party attempting to compel arbitration
must first establish that the dispute in question falls within the scope of a valid arbitration
agreement"); In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (orig.
proceeding) (holding that "[a] party seeking to compel arbitration must establish the
existence of an arbitration agreement, and show that the claims raised fall within the scope
of that agreement"), abrogated on other grounds by In re Halliburton Co., 80 S.W.3d 566,
571 (Tex. 2002) (orig. proceeding); In re Ford Motor Co., 220 S.W.3d 21, 23-24 (Tex.
App.-San Antonio 2006, orig. proceeding). In this case, the "claims subject to arbitration"
clause applies to "all claims that I may now have or may in the future have." This does not
expressly incorporate claims that Garcia's heirs or children may have, and the language
purporting to bind her heirs and children is limited by the narrower scope of the "claims
subject to arbitration" clause. As in Fleetwood Enterprises, Inc. v. Gaskamp, 280 F.3d
1069 (5th Cir. 2002), the "children did not personally sign the arbitration agreements, and
there is no provision in the agreement expressly stating that the . . . parents, on behalf of
their children, agreed to submit the children's claims to arbitration." See id. at 1074. 

 In the absence of "unmistakable evidence" that the parties to this arbitration
agreement intended that the issue of whether Garcia's children are bound by the arbitration
agreement would be decided by an arbitrator, we hold that the general rule requiring the
trial court to decide "gateway" matters applies in the instant case. See Ford Motor Co.,
220 S.W.3d at 23-24.

IV. Claims of Minor Children


 In their second issue, relators contend that the trial court erred in failing to order to
arbitration the loss of parental consortium claims of Garcia's minor children. Relators
contend that the minor children are expressly bound by the arbitration agreement. Relators
also contend that the minor children are both third-party and direct beneficiaries of the
arbitration agreement. 

A. Express Terms of the Agreement


 Relators contend that Garcia bound her minor children to the arbitration agreement
when she signed it because the agreement expressly provides:

 This agreement to resolve claims by arbitration is mutually binding upon both
me and the Company (and its affiliates, including SSP Partners . . .), and it
binds and benefits our . . . children . . . .


We cannot agree with relators' argument. Garcia agreed to arbitrate "disputes [that] may
arise between the Company (or one of its affiliates) and me." Garcia agreed to arbitrate
her claims; she did not agree to arbitrate the claims of her minor children. Cf. In re Kepka,
178 S.W.3d 279, 296 (Tex. App.-San Antonio 2005, orig. proceeding) (declining to enforce
arbitration against a non-signatory wife because "a surviving wife may be an heir, within
the meaning of an arbitration agreement that she did not sign individually, to her late
husband's claims; she cannot be an heir to her own claims"). 

 There is no provision in the agreement stating that Garcia, on behalf of her children,
was agreeing to submit the children's claims to arbitration. Garcia did not sign the
agreement on behalf of the children or as representative of the children. Accordingly, the
children are not bound by the express terms of the agreement. See Fleetwood Enter., Inc.,
280 F.3d at 1074; see also Fortune v. Killebrew, 86 Tex. 172, 175, 23 S.W. 976, 977
(1893) ("But [the children] did not sign; and, as we have seen, their father having an
adverse interest, had no authority to sign [the arbitration agreement] for them as their
guardian."); Snow v. Walker, 42 Tex. 154, 156, 1874 Tex. LEXIS 288, *4-*5 (1874) (holding
that mother's agreement to arbitrate matters concerning an estate in which the mother and
her minor children had a common interest did not estop the minors from asserting claim
to the estate).

 Relators argue that Garcia exercised her statutory, perhaps constitutional, (2) right to
make a decision of substantial legal significance for her minor children. Under the family
code, a parent of a child has the right to represent the child in legal actions and to make
other decisions of substantial legal significance concerning the child. See Tex. Fam. Code
Ann. § 151.001(a)(7) (Vernon Supp. 2006). Relators further contend that courts in other
jurisdictions have enforced arbitration agreements entered into by parents on behalf of
their minor children. Relators also contend that the parens patriae doctrine, that is, the
doctrine that all orphans, dependent children, and incompetent persons, are within the
special protection, and under the control, of the state, fails to justify the failure to enforce
the agreement. 

 We do not disagree with the general proposition that, under certain circumstances, 
parents have the authority to enter arbitration agreements on behalf of their minor children. 
However, this is not such a case. "Texas law does not ordinarily bind children to the
contracts their parents sign." Fleetwood, 280 F.3d at 1076; see also Southwest Tex.
Pathology Assocs., L.L.P., v. Roosth, 27 S.W.3d 204, 208 (Tex. App.-San Antonio 2000,
pet. dism'd w.o.j.); In re Conseco Fin. Corp., 19 S.W.3d 562, 565 (Tex. App.-Waco, orig.
proceeding); Merrill Lynch, Pierce, Fenner, and Smith, Inc. v. Longoria, 783 S.W.2d 229,
231 (Tex. App.-Corpus Christi 1990, no writ). Under the contract at issue, Garcia did not
expressly agree to submit her minor children's claims to arbitration. We will not require the
minors to arbitrate simply because they are minors and their claims are related to that of
their parent. 

 B. Third-Party and Direct Beneficiaries


 Relators also contend that the minor children are both third-party and direct
beneficiaries (3) of the arbitration agreement. Relators contend that under the arbitration
agreement the children received (1) the benefit of arbitration; (2) a death benefit payable
to the spouse and children, if any, of Garcia; and (3) wage replacement disability benefits. 
 Nonsignatories may be bound to an arbitration clause when the rules of law or
equity would bind them to the contract generally. See In re Kellogg, Brown & Root, 166
S.W.3d at 741; In re FirstMerit Bank, N.A., 52 S.W.3d at 755.

 A third-party beneficiary may enforce a contract to which it is not a party if the
parties to the contract intended to secure a benefit to that third party and entered into the
contract directly for the third party's benefit. In re Palm Harbor Homes, Inc., 195 S.W.3d
at 677; see Stine v. Stewart, 80 S.W.3d 586, 589 (Tex. 2002). There is a presumption
against, not in favor of, third-party beneficiary agreements. MCI Telecomms. Corp. v.
Texas Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999).

 In contrast, under direct benefits estoppel, to be compelled to arbitrate, a
nonsignatory must either (1) bring claims in a lawsuit that seek direct benefits from a
contract containing an arbitration clause, or (2) deliberately seek and obtain substantial
benefits from the contract itself outside of litigation. In re Weekley Homes, L.P., 180
S.W.3d 127, 131-33 (Tex. 2005). Cf. Serv. Corp. Int'l v. Lopez, 162 S.W.3d 801, 811 (Tex.
App.-Corpus Christi 2005, no pet.) ("Texas courts have found non-signatories bound to
arbitration agreements in two situations: first where the non-signatory sued on the
contract; and second, where the non-signatory was a third-party beneficiary of the
contract."). 

 While the boundaries of direct-benefits estoppel are not always clear, nonparties
generally must arbitrate claims if liability arises from a contract with an arbitration clause,
but not if liability arises from general obligations imposed by law. In re Vesta Ins. Group,
Inc., 192 S.W.3d 759, 761 (Tex. 2006); Weekley, 180 S.W.3d at 132, 134. The doctrine
of direct-benefits estoppel does not apply when the benefits alleged are insubstantial or
indirect; it does apply when one deliberately seeks substantial and direct benefits from the
contract. Weekley, 180 S.W.3d at 134. The equitable nature of the doctrine may render
firm standards inappropriate, requiring trial courts to exercise some discretion based on the
facts of each case. Weekley, 180 S.W.3d at 134-135.

 In the instant case, Garcia did not enter the contract directly for her children's
benefit. See Palm Harbor Homes, Inc., 195 S.W.3d at 678. Moreover, the children,
through their representatives, have expressly disaffirmed the alleged arbitration agreement. 
See id. (third-party beneficiaries generally have the right to disclaim benefits proffered by
a contract). The minor children are neither bringing claims in a lawsuit that seek direct
benefits from the contract containing an arbitration clause, nor are they deliberately
seeking and obtaining substantial benefits from the contract itself outside of litigation. In
re Weekley Homes, L.P., 180 S.W.3d at 131-33. Cf. In re Ford Motor Co., 220 S.W.3d at
24 (binding children to arbitration clause signed by parents in breach of warranty case
where children sued on contract). 

 The children's claims are separate and distinct from those asserted by Garcia under
the contract. Cf. Kepka, 178 S.W.3d at 295 (holding that non-signatory wife, asserting in
her individual capacity claims for damages such as her own mental anguish and loss of
consortium, earnings, companionship, society, and inheritance, lacked the type of privity
contemplated for the contracting parties to bind her to a contract that she did not sign in
her individual capacity). The children are bringing claims for loss of parental consortium. 
A child can recover for loss of consortium when the parent suffered serious, permanent,
and disabling injury or death. Reagan v. Vaughn, 804 S.W.2d 463, 467 (Tex. 1996). A
claim for loss of parental consortium is derivative to the extent that liability for the parent's
injury must be established, and as such is subject to the same defenses applicable to the
injured parent's claim. Lehmann v. Har-Con Corp., 76 S.W.3d 555, 564 (Tex.
App-Houston [14th Dist.] 2002, no pet.). However, a loss of parental consortium claim is
a separate and independent claim that is not automatically extinguished merely because,
for instance, the injured parent has settled his claim for his personal injuries. See id. 

 We conclude that the rules of law or equity do not bind Garcia's minor children to
her contract and that they are not subject to arbitration as third party or direct beneficiaries
of the arbitration agreement. 

V. Conclusion


 Relators have failed to establish a valid agreement to arbitrate with the minor
children. Accordingly, the petition for writ of mandamus is denied. See Tex. R. App. P.
52.8(a).




 _______________________

 ROGELIO VALDEZ,

 Chief Justice



Opinion delivered and filed 

this the 11th day of October, 2007.

 

 
1. See Garcia v. SSP Partners, No. C-06-385, 2006 U.S. Dist. LEXIS 75810, at *23 (S.D. Tex. Oct. 3,
2006).
2. See, e.g., Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976) ("The natural right which exists
between parents and their children is one of constitutional dimensions.").
3. The third-party and direct beneficiary doctrines have been treated as distinct. In re Kellogg Brown
& Root, Inc., 166 S.W.3d 732, 739 & n.7 (Tex. 2005). However, conceptually, it would appear that the
doctrines are related, if not co-extensive.