# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00568-SCT

*SIMMONS HOUSING, INC. AND SOUTHERN ENERGY HOMES, INC.*

*v.*

*COLEMAN BRITT SHELTON AND JOSHUA MASON SHELTON, BY AND THROUGH THEIR MOTHER AND NEXT FRIEND, KIMBERLY SHELTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/16/2009 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MUNCELLE MITCHELL |
| | JOE S. DEATON, III |
| | ALAN GOODMAN |
| | BARBARA MEEKS |
| | JAMES L. QUINN |
| ATTORNEYS FOR APPELLEES: | JEFFREY A. VARAS |
| | DONNA HODGES |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED AND REMANDED - 06/17/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., RANDOLPH AND CHANDLER, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Roy and Kimberly Shelton, individually and as next friends of their two minor children, filed suit against Simmons Housing, Inc., and Southern Energy Homes, Inc., in which they alleged several claims concerning an allegedly defective mobile home. The

circuit court compelled Roy's and Kimberly's claims to arbitration based on two agreements they had signed in purchasing the mobile home. The circuit court refused, however, to compel the minor, nonsignatory children's claims to arbitration. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. In December 1998, Roy and Kimberly Shelton purchased a mobile home from Simmons Housing, Inc., in Brookhaven, Mississippi. Roy, Kimberly, and Jackey Simmons, President of Simmons Housing, Inc., executed a retail-installment contract that included an arbitration provision.[1] These same parties also entered a separate "Binding Arbitration Agreement."[2]

---

[1] The arbitration provision in paragraph 14 stated, in pertinent part, that:

All disputes or controversies arising from or relating to this Contract or the parties thereto shall be resolved by binding arbitration by one arbitrator selected by Assignee with consent of Buyer(s). This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this Contract. . . .

[2] The Binding Arbitration Agreement stated, in pertinent part, that:

All disputes not barred by applicable statues of limitations or otherwise barred by law, resulting from or arising out of the design, manufacture, warranty or

¶3. On November 22, 2005, Roy and Kimberly together with their two children, Coleman Britt Shelton and Joshua Mason Shelton, (collectively "the Sheltons") filed suit against several entities and individuals, including Simmons Housing, Inc., and Southern Energy Homes, Inc., the manufacturer of the mobile home.[3] The Sheltons asserted numerous claims including breach of contract, breach of warranties under the Uniform Commercial Code, strict liability, negligence, misrepresentation, fraud, and violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. (2000). They primarily alleged that the mobile home was unfit for habitation due to mold and mildew.

¶4. The defendants removed the case to the United States District Court for the Southern District of Mississippi based on the Sheltons' federal-law claim under the Magnuson-Moss

repair of the manufactured home, (including but not limited to: the terms of the warranty, the terms of this arbitration agreement and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties concerning any goods or services manufactured or provided by Southern Energy Homes, Inc.; the condition of the manufactured home; the conformity of the manufactured home to federal building standards; the representations, promises, undertakings, warranties or covenants made by Southern Energy Homes, Inc., (if any); or otherwise dealing with the manufactured home); will be submitted to BINDING ARBITRATION, pursuant to the provisions of 9 U.S.C. section 1, et. seq. . . . . Any party to this agreement who fails or refuses to arbitrate in accordance with the terms of this pre-dispute binding arbitration agreement shall, in addition to any other relief awarded through arbitration, be taxed by the arbitrator or arbitrators with all of the costs, including reasonable attorneys fees, of the other party who has to resort to judicial or other means of compelling arbitration in accordance with the terms herein contained. THIS ARBITRATION SHALL BE IN LIEU OF ANY CIVIL LITIGATION IN ANY COURT, AND IN LIEU OF ANY TRIAL BY JURY.

[3] The other defendants not made parties to this appeal are Green Tree Financial Servicing Corp., American Bankers Insurance Co. of Florida, Assurant Solutions, and twenty John Does.

3

Warranty Act. But after the Sheltons dismissed their Magnuson-Moss Warranty Act claim, the federal district court remanded the case to the Circuit Court of Copiah County.

¶5. On remand, Simmons Housing, Inc., and Southern Energy Homes, Inc., filed motions to compel arbitration. The circuit court granted Simmons Housing, Inc.'s motion to enforce arbitration. In response, the Sheltons filed a motion for reconsideration, arguing that their minor children's claims should not be subject to arbitration because the minor children's claims were separate, distinct, and grounded in tort law. Southern Energy Homes, Inc., also moved the circuit court to provide specifically that the Sheltons' claims against it were subject to binding arbitration as well.

¶6. On May 17, 2009, the circuit court granted the Sheltons' motion for reconsideration, and modified and reversed its earlier ruling in part. The circuit court ruled that Roy's and Kimberly's claims must be submitted to binding arbitration. Conversely, it determined that the Shelton children's claims were not subject to arbitration. The circuit court found that the Shelton children were not third-party beneficiaries of the agreements and were not bound to arbitration by any rule of agency or estoppel. It thus denied Simmons Housing, Inc.'s and Southern Energy Homes, Inc.'s motions to compel arbitration as to the Shelton children's claims.

¶7. Simmons Housing, Inc., and Southern Energy Homes, Inc., now appeal to this Court, asserting that the Shelton children are bound to arbitration as third-party beneficiaries or based on principles of equitable estoppel.

**DISCUSSION**

4

**Whether the Shelton children are bound to the terms of arbitration agreements that their parents signed, but they did not.**

¶8. This Court reviews de novo the grant or denial of a motion to compel arbitration. *Qualcomm v. American Wireless Group*, 980 So. 2d 261, 268 (Miss. 2007) (quoting *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)).

¶9. A strong federal policy favoring arbitration is well-established. *E.g.*, *Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703, 708 (Miss. 2006) (citations omitted). Nonetheless, a party generally is not required to arbitrate disputes unless that party previously has agreed to do so. *Qualcomm*, 980 So. 2d at 269 (quoting *Adams* at 708). Yet there are well-recognized exceptions to this rule. A nonsignatory may be bound to an arbitration agreement under ordinary principles of contract and agency. *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1058 (Miss. 2004) (quoting *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). Accordingly, this Court has stated that "a signatory may enforce an arbitration agreement against a non-signatory if the non-signatory is a third-party beneficiary or if the doctrine of equitable estoppel applies." *Qualcomm*, 980 So. 2d at 269 (citing *Adams*, 943 So. 2d at 708).

*Third-Party Beneficiary*

¶10. Third-party-beneficiary status arises from the terms of the contract. *Burns v. Washington Savings*, 251 Miss. 789, 796, 171 So. 2d 322, 325 (1965) (citing 17A C.J.S. Contracts § 519(4) (1963)). A person or entity may be deemed a third-party beneficiary if: (1) the contract between the original parties was entered for that person's or entity's benefit, or the original parties at least contemplated such benefit as a direct result of performance; (2)

5

the promisee owed a legal obligation or duty to that person or entity; and (3) the legal obligation or duty connects that person or entity with the contract. *Burns*, 171 So. 2d at 325 (citing 17A C.J.S. *Contracts* § 519(4) (1963)). In *Yazoo & M.V.R. Co. v. Sideboard*, 161 Miss. 4, 133 So. 669 (1931), this Court offered the following analysis for determining third-party-beneficiary status:

> (1) When the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

*Sideboard*, 161 Miss. at 15.

¶11.    A third-party beneficiary also must benefit directly from the contract. *Adams*, 943 So. 2d at 709 (individual was not a third-party beneficiary where she did not sign the contract, was not alluded to in the contract, and had received no benefits from the contract). A mere incidental or consequential benefit is insufficient. *Adams*, 943 So. 2d at 708 (quoting *Burns*, 171 So. 2d at 325).

¶12.    Simmons Housing, Inc., and Southern Energy Homes, Inc., argue that the Shelton children are third-party beneficiaries of the agreements signed by their parents. They contend that that the Shelton children directly benefitted from the contract by living in the mobile home, and that Roy and Kimberly had a legal duty to provide shelter for their children.

¶13.    The United States Court of Appeals for the Fifth Circuit confronted a similar set of facts in *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069 (5th Cir. 2002). There, the

6

Gaskamp parents purchased a mobile home from Fleetwood. *Id.* at 1071. The parents signed certain documents that contained an arbitration provision. *Id.* After moving into the home, the parents and their children began to experience health problems. *Id.* Consequently, the Gaskamp parents filed suit individually and as next friends of their children against Fleetwood and several other defendants. *Id.* at 1072. The Fifth Circuit, applying Texas law,[4] found that the children were not third-party beneficiaries of their parents' contract, and thus could not be required to arbitrate under that theory. *Id.* at 1075-76, 1077-78. The contract made no mention of the Gaskamp children and "[a]ny intention to confer a direct benefit [was] far from being 'clearly and fully spelled out.'" *Id.* at 1076. Significantly, the fact that the Gaskamp children had lived with their parents in the mobile home made them incidental, not direct, beneficiaries. *Id.*

¶14.    While *Gaskamp* is not binding on this Court, we consider it persuasive for this case. The Shelton children were not referenced or alluded to in the contract. Additionally, their living in the mobile home did not make them direct beneficiaries. Accordingly, we find that the Shelton children are not third-party beneficiaries to the agreements signed by their parents.

    *Estoppel*

---

[4] Under Texas law, nonsignatories are bound to arbitration in only two situations: (1) where the nonsignatory sues on the contract; and (2) where the nonsignatory is a third-party beneficiary. *Gaskamp*, 280 F.3d at 1074. Unlike Mississippi, *Qualcomm*, 980 So. 2d at 269 (quoting *Bridas S.A.P.I.C v. Turkemistan*, 345 F.3d 347, 356 (5th Cir. 2003)), Texas courts do not even mention additional possible bases for binding nonsignatories to arbitration. *Gaskamp*, 290 F.3d at 1076. The Fifth Circuit, nevertheless, noted that none of these additional theories bound the Gaskamp children to arbitration. *Id.*

¶15. Equitable estoppel is an extraordinary remedy that should be used with caution. *Adams*, 943 So. 2d at 709 (citing *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 491 (Miss. 2005)). It is defined generally as "'the principle by which a party is precluded from denying any material fact, induced by his words or conduct upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was allowed.'" *B.C. Rogers*, 911 So. 2d at 492 (quoting *Dubard v. Biloxi H.M.A., Inc.*, 778 So. 2d 113, 114 (Miss. 2000)).

¶16. In the arbitration context, equitable estoppel prevents a party from embracing the benefits of a contract while simultaneously trying to avoid its burdens:

> [T]he doctrine [of estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the [Federal] Arbitration Act.

*Terminix*, 904 So. 2d at 1058 (quoting *Bailey*, 364 F.3d at 268).

¶17. Simmons Housing, Inc., and Southern Energy Homes, Inc., contend that the Shelton children's claims arise from the contract. Having invoked rights under the contract by alleging a breach thereof, the Shelton children cannot now disclaim provisions they dislike. The Shelton children concede that the complaint "may appear" to rely in part on the terms of the contract. But they insist that they do not—and cannot—seek recovery for breach of contract. They rather assert that their claims are based on negligence, strict liability, and products liability.

¶18.    In **_Terminix_**, this Court applied equitable estoppel to bind a nonsignatory to arbitration. **_Terminix_**, 904 So. 2d at 1058. In that case, a husband and wife sued Terminix for negligence, misrepresentation, fraud, breach of contract, and fraudulent inducement. **_Id._** at 1053. Terminix sought to enforce arbitration against the husband and the wife, even though the wife had not signed the agreement. **_Id._** at 1053, 1057. This Court held that the wife was bound to the arbitration agreement under the ordinary principles of equitable estoppel. **_Id._** at 1058. The Court, however, gave very little discussion as to why equitable estoppel applied to the facts of that case. _See_ **_id._** at 1057-58. A footnote suggests that the Court afforded great weight to the fact that the wife's suit relied exclusively on the contract. _See_ **_id._** at 1058 n.3.

¶19.    In **_Adams_**, this Court once again considered applying equitable estoppel to a nonsignatory of an arbitration agreement. **_Adams_**, 904 So. 2d at 709. This time, the Court held that equitable estoppel did not apply. **_Id._** In **_Adams_**, a husband and wife entered into a financing agreement for the purchase of a mobile home. **_Id._** at 704. Years later, the assignee of the contract, GreenPoint, allegedly presented an unauthorized draft on the joint checking account of the husband and his daughter, Beth Brown. **_Id._** at 704. Father and daughter filed suit, and GreenPoint moved to compel arbitration. **_Id._** at 705. GreenPoint argued that Brown, a nonsignatory to her parents' agreement, should be equitably estopped from avoiding arbitration. **_Id._** at 708-09. This Court found that equitable estoppel did not apply because the record did not reflect that GreenPoint relied upon and detrimentally changed its position as a result of Brown's representations. **_Id._** at 709.

9

¶20. We find that equitable estoppel should not be applied to this case. As in *Adams*, there is nothing to show that Simmons Housing, Inc., or Southern Energy Homes, Inc., detrimentally relied on the Shelton children's representations. *See Adams*, 943 So. 2d at 709. And unlike *Terminix*, the Shelton children's claims are not based solely on the retail installment contract. Their claims include strict liability, negligence, and breach of warranties under the Uniform Commercial Code. Such claims are not dependent on the terms of the contract. *See Gaskamp*, 280 F.3d at 1072 n.3, 1075; *May v. Ralph L. Dickerson Const. Corp.*, 560 So. 2d 729, 730-31 (Miss. 1990) (affirming that Section 11-7-20 of the Mississippi Code abolished the privity requirement for maintaining actions for negligence, strict liability, or breach of warranty).

¶21. Simmons Housing, Inc., and Southern Energy Homes, Inc., emphasize that, to date, the Shelton children have not amended or withdrawn their complaint to strike any contract-related claims. The Shelton children explained during oral argument that they had not done so because the matter had been stayed.

**CONCLUSION**

¶22. We find that the Shelton children are not bound to arbitration as third-party beneficiaries, and that the principles of equitable estoppel do not apply. Therefore, we affirm the lower court's decision. The Shelton children's claims grounded in tort are remanded for further proceedings in the trial court, but their contract-related claims have been expressly relinquished.

¶23. **AFFIRMED AND REMANDED.**

**CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**