## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01474-COA

| | |
|---|---|
| **BRUCE COPE, MARY COPE AND IKE W. THRASH** | **APPELLANTS/CROSS-APPELLEES** |
| **v.** | |
| **THRASHER CONSTRUCTION, INC.** | **APPELLEE/CROSS-APPELLANT** |

DATE OF JUDGMENT: 10/01/2014
TRIAL JUDGE: HON. MICHAEL H. WARD
COURT FROM WHICH APPEALED: HARRISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANTS: NICHOLAS VAN WISER
ATTORNEYS FOR APPELLEE: SAMUEL C. KELLY
    KAREN ELIZABETH HOWELL
    TAYLOR BRANTLEY MCNEEL
NATURE OF THE CASE: CIVIL - CONTRACT
TRIAL COURT DISPOSITION: AFFIRMED COUNTY COURT'S ORDER
    DENYING APPELLANTS' MOTION FOR A
    JUDGMENT NOTWITHSTANDING THE
    VERDICT
DISPOSITION: REVERSED, RENDERED, AND
    REMANDED - 06/28/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

    **EN BANC.**

    **GRIFFIS, P.J., FOR THE COURT:**

¶1.    Bruce Cope, Mary Cope, and Ike Thrash (Cope and Thrash) appeal a judgment against them requiring that they pay Thrasher Construction $69,290 for goods and services provided in waterproofing Inn by the Sea, a condominium in Pass Christian, Mississippi. Cope and Thrash argue that the facts of this case do not support a recovery under the theory of quantum meruit. Thrasher Construction cross-appeals claiming that the county court erred in

dismissing its third-party-beneficiary claim against Cope and Thrash.

FACTS

¶2.     Inn by the Sea was destroyed by Hurricane Katrina in 2005. The owners of the individual units engaged SeaInn LLC (SeaInn) to develop a new complex and rebuild. SeaInn consisted of two members, Greg Stewart and Kenny Labelle. The unit owners conveyed their interest in the property to SeaInn in order to begin the project. SeaInn then hired Madison Homes as its general contractor. Greg Stewart is the only known representative of Madison Homes.

¶3.     In February 2009, Madison Homes contracted with Thrasher Construction in order to waterproof Inn by the Sea. Thrasher Construction was to be paid $106,600 for this project. Thrasher Construction worked on the Inn by the Sea project from April to July of 2009. Each month, it sent an invoice to Madison Homes, but none of the invoices were paid. Eventually, upon completion of sixty-five percent of the work on the Inn by the Sea project, Thrasher Construction stopped work due to nonpayment. Thrasher Construction then filed a Notice of Construction Lien against the Inn by the Sea property in September 2009. The amount due at the time that Thrasher Construction stopped work was $69,290, calculated based on the percentage of the project completed.

¶4.     Ike Thrash later purchased Labelle's fifty percent interest in SeaInn. He then signed over part of his interest to Bruce Cope and Mary Cope. After realizing that neither Stewart nor Madison Homes was paying the subcontractors, Cope and Thrash entered into a settlement agreement with Stewart to remove him. Cope and Thrash agreed to take over and

2

complete certain projects. Cope and Thrash agreed to pay the subcontractors on the Inn by the Sea project to the extent that the invoices provided by Stewart were "true, valid[,] and correct." Attached to the agreement was a list of unpaid invoices for each project; Thrasher Construction's multiple invoices were listed.

¶5.     Cope and Thrash then began to contact the subcontractors. They requested that the subcontractors come to Inn by the Sea during a specific two-day period to verify the work performed. Upon verification, Cope and Thrash would pay each subcontractor what was owed. Thrash contacted Thrasher Construction approximately four times during this two-day period, but Thrasher Construction did not come to the project to verify its work because of the existing lien. Cope and Thrash paid every other subcontractor on the Inn by the Sea project. In November 2009, Thrasher Construction withdrew its lien.

¶6.     Thrasher Construction then filed a lawsuit against Madison Homes as well as Cope and Thrash claiming breach of contract. Specifically, Thrasher Construction alleged breach of contract as a third-party beneficiary against Cope and Thrash based on the settlement agreement.

¶7.     During trial, after Thrasher Construction's case-in-chief, the county court dismissed the third-party beneficiary breach-of-contract claim after Cope and Thrash moved for a directed verdict. The court allowed Thrasher Construction to proceed on the theory of quantum meruit. The jury returned a verdict in favor of Thrasher Construction in the amount of $69,290. Cope and Thrash then filed a motion for a judgment notwithstanding the verdict (JNOV), which was denied by the county court. They appealed to the circuit court, which

affirmed. Cope and Thrash now appeal; Thrasher Construction cross-appeals.

ANALYSIS

I.     *Whether the court erred in allowing Thrasher Construction to proceed on the theory of quantum meruit.*

¶8.     First, Cope and Thrash contend that the express contract between Madison Homes and Thrasher Construction should have precluded Thrasher Construction from moving forward on the theory of quantum meruit. Second, Cope and Thrash argue that Thrasher failed to meet the burden of proof as to the elements of quantum meruit, and therefore, the court erred in allowing quantum meruit to be before the jury for consideration.

¶9.     When reviewing the denial of a motion for a JNOV,

> we will review all of the evidence in the light most favorable to the party opposed to the motion. If the facts and inferences from this evidence point so overwhelmingly in favor of the movant that reasonable jurors could not have arrived at a contrary verdict, the motion would be properly granted. On the other hand, if there is evidence of such quality and weight that reasonable and fair[-]minded jurors in the exercise of impartial judgment might reach different conclusions, the jury verdict should be allowed to stand, and the motion would be properly denied.

*Ferguson v. Snell*, 905 So. 2d 516, 520 (¶16) (Miss. 2004).

¶10.     "Quantum meruit means literally 'as much as he deserves[.]'" *Redd v. L&A Contracting Co.*, 151 So. 2d 205, 207 (Miss. 1963). "Quantum meruit is a contract remedy which may be premised either on express or implied contract, and a prerequisite to establishing grounds for quantum meruit recovery is the claimant's reasonable expectation of compensation." *Ace Pipe Cleaning Inc. v. Hemphill Constr. Co.*, 134 So. 3d 799, 805 (¶29) (Miss. Ct. App. 2014). The essential elements for recovery under quantum meruit are:

4

> (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used[,] and enjoyed by him; and (4) under such circumstances as reasonably notified [the] person sought to be charged that [the] plaintiff, in performing such services, . . . expected to be paid by [the] person sought to be charged.

*In re Estate of Fitzner*, 881 So. 2d 164, 173-73 (¶25) (Miss. 2003). Quantum meruit

> applies to situations where there is no legal contract but where the person sought to be charged is in possession of money which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.

*Ace Pipe Cleaning*, 134 So. 3d at 806 (¶29).

¶11.    To collect under the theory of quantum meruit, "the claimant must show there is no legal contract[.]" *Johnston v. Palmer*, 963 So. 2d 586, 596 (¶22) (Miss. Ct. App. 2007). It is true that quantum meruit "may be premised either on express or implied contract." *Ace Pipe Cleaning*, 134 So. 3d at 805 (¶29). But "where there is a contract, and the contract has not failed, the parties may not abandon the contract and resort to quantum meruit." 3 Jeffrey Jackson & Mary Miller, *Encyclopedia of Mississippi Law* § 21:73 (2001); *Sentinel Indus. Contracting Corp. v. Kimmis Indus. Serv. Corp.*, 743 So. 2d 954, 970 (¶48) (Miss. 1999).

¶12.    A contract existed between Madison Homes and Thrasher Construction, and "there cannot be an express and an implied contract for the same thing[] existing at the same time." *Redd*, 151 So. 2d at 208. "The error in this whole proceeding arises from the assumption[] that [Cope and Thrash] might become liable . . . [and] that [Cope and Thrash] should pay the reasonable worth of services . . . notwithstanding such services were rendered under an express agreement with another person." *Id.*

5

¶13. We find that the theory of quantum meruit was improperly before the jury, as a legal contract existed between Madison Homes and Thrasher Construction, precluding the use of quantum meruit as a remedy between these parties. Furthermore, Thrasher Construction submitted proof that Cope and Thrash removed Madison Homes from the project and assumed the obligation to pay Thrasher Construction as well as the other unpaid subcontractors. This evidence supports Thrasher Construction's contention that its claim for breach of contract as a third-party beneficiary was the proper method for obtaining relief.

> II. *Whether the court erred in dismissing Thrasher Construction's third-party-beneficiary claim.*

¶14. Thrasher Construction argues on cross-appeal that county court erred in granting Cope and Thrash's motion for a directed verdict, dismissing its claim for breach of contract as a third-party beneficiary.

¶15. The standard of review of a trial court's grant of a directed verdict is de novo. *White v. Stewman*, 932 So. 2d 27, 32 (¶10) (Miss. 2006). In reviewing a directed verdict,

> [t]his Court will consider the evidence in the light most favorable to the appellee non-movant, giving that party the benefit of all favorable inference[s] that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant movant that reasonable jurors could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence of such quality and weight that reasonable and fair[-]minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

*Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 505-06 (¶26) (Miss. 2007).

¶16. "Third-party beneficiary status arises from the terms of the contract." *Simmons Housing Inc. v. Shelton*, 36 So. 3d 1283, 1286 (¶10) (Miss. 2010). An entity may be

6

considered a third-party beneficiary if:

> (1) the contract between the original parties was entered for that person's or entity's benefit, or the original parties at least contemplated such benefit as a direct result of performance; (2) the promisee owed a legal obligation or duty to that person or entity; and (3) the legal obligation or duty connects that person or entity with the contract.

*Id.* The supreme court has provided the following for determining third-party beneficiary status:

> (1) When the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

*Id.* Furthermore, "[a] third-party beneficiary also must benefit directly from the contract .

. . . A mere incidental or consequential benefit is insufficient." *Id.* at 1286-87 (¶11).

¶17.   The relevant section of the settlement agreement reads as follows:

> Cope and Thrash shall be responsible for the payment of all outstanding bills and invoices for work performed and materials supplied on the following projects:
>
> - Inn by the Sea (Seainn, LLC);
>
> - LLDG Avalon, LLC (Four Points Hotel); and
>
> - The Township at Ocean Springs, LLC.
>
> This shall be accomplished as follows:
>
> a. Stewart has provide[d] a list of all invoices received to date, and the identity of persons/entities with unbilled work-in-process for the above three projects to Thrash and Cope which is attached hereto . . . ;
>
> b. Stewart has provided all required underlying documentation (bills, invoices,

7

etc.) supporting the listing of unpaid receivables;

c. *Thrash, along with Stewart, shall be entitled to contact any of the subcontractors or suppliers for the purposes of determining the fact that such sums are, in fact, due and owing and represent work performed or materials provided to the specific three projects enumerated above. To the extent that the invoices do not represent such sums, they shall not be payable by Thrash and Cope. To the extent that they are true, valid and correct payables as to the three above-named projects, Cope and Thrash shall pay same within 7 days.*

(Emphasis added).

¶18.   Thrasher Construction qualifies as a third-party beneficiary.   The settlement agreement between Stewart and Cope and Thrash contemplated that Thrasher Construction would benefit as a direct result of performance – i.e., it would be paid for its work.  Stewart, as Madison Homes, owed a duty to Thrasher Construction.   And that duty connected Thrasher Construction with the settlement agreement.   The Inn by the Sea project was specifically listed in the settlement agreement, and Thrasher Construction's invoices were listed in an attachment to the agreement along with the total payment due to Thrasher Construction.

¶19.   Cope and Thrash argue that the settlement agreement did not contain an unconditional promise to pay Thrasher Construction.   Rather, the settlement agreement required that Thrasher Construction come verify its work as a condition precedent to being paid.  Thrasher Construction, after being contacted approximately four times during the two-day period when Cope and Thrash were conducting the verifications, did not go to Inn by the Sea to verify its work.  Because Thrasher Construction never complied with this condition, Cope and Thrash argue that a duty to perform never arose from the settlement agreement in relation to

8

Thrasher Construction. Testimony during trial did show that Thrasher Construction later contacted Cope and Thrash in an effort to verify the work performed at Inn by the Sea, but Cope and Thrash refused to receive them and denied payment.

¶20. "A condition precedent has been defined as a condition which must be performed before the agreement of the parties shall become a binding contract or a condition which must be fulfilled before the duty to perform an existing contract arises." *Turnbough v. Steere Broadcasting Corp.*, 681 So. 2d 1325, 1327 (Miss. 1996). It is true that "[i]f a fact or event is a condition precedent to a promisor's duty to render the performance promised, its absence or non-occurrence is a 'defense' in an action brought against him for breach of his promise." *Id.* But we find no such condition present in the settlement agreement that required Thrasher Construction to respond within two days to a request to verify the work performed at Inn by the Sea. The agreement entitles Thrash to contact the subcontractors to verify that the sums listed by Stewart were correct. If the invoices did not represent the correct amount due, Thrash and Cope would not be responsible to pay them. But "to the extent that they [were] true, valid[,] and correct," Cope and Thrash were responsible for the payment.

¶21. During trial, Cope and Thrash argued heavily that Thrasher Construction did not actually perform the work, and therefore, they were not responsible for the payment. On appeal, Cope and Thrash argue differently. They now argue that they are simply not the responsible party. The settlement agreement reveals otherwise. Cope and Thrash agreed to pay the invoices due on the Inn by the Sea project if those invoices were correct. A jury found that Thrasher Construction had in fact done the work it claimed. Furthermore, the

9

settlement agreement has no condition that requires Thrasher Construction to go to the project for a meeting to verify its work. A reading of the settlement agreement shows that the only way Cope and Thrash would not be responsible for paying Thrasher Construction is if the work was never performed.

¶22. As the Court finds no such condition upon Thrasher Construction, and Thrasher Construction was a third-party beneficiary of the settlement agreement, the breach-of-contract claim against Cope and Thrash was erroneously dismissed. The facts point so overwhelmingly in favor of Thrasher Construction that reasonable jurors could not have arrived at a contrary verdict.

¶23. Accordingly, the judgment of the Circuit Court of Harrison County on the claim for quantum meruit is reversed and rendered. Also, on the cross-appeal, the trial court's judgment that dismissed Thrasher Construction's claim for breach of contract as a third-party beneficiary is reversed and remanded for further proceedings consistent with this opinion.

¶24. **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED AND RENDERED ON DIRECT APPEAL, AND REVERSED AND REMANDED ON CROSS-APPEAL FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS/CROSS-APPELLEES.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE AND GREENLEE, JJ., CONCUR. FAIR, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY FAIR AND JAMES, JJ.; WILSON AND GREENLEE, JJ., JOIN IN PART.**

**CARLTON, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶25. I respectfully concur in part and dissent in part from the majority's opinion. I agree

10

with the majority that the record reflects the circuit court erred in dismissing Thrasher Construction's third-party-beneficiary claim. *See Aladdin Constr. Inc. v. John Hancock Life Ins.*, 914 So. 2d 169, 179-80 (¶21) (Miss. 2005). However, unlike the majority, I would affirm the jury's verdict awarding Thrasher Construction $69,290 based upon the alternate theory of recovery of quantum meruit. *See Ground Control LLC v. Capsco Indus. Inc.*, 120 So. 3d 365, 371 (¶¶13-15) (Miss. 2013) (finding that, although the lack of certificates of responsibility rendered the parties' contract void, this did not preclude the sub-subcontractor from asserting claims of unjust enrichment and quantum meruit, and stating that "[u]njust enrichment applies to situations where there is no legal contract and the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another" (citation and internal quotation marks omitted)).[1]

¶26.    The record reflects that Cope and Thrash, as owners of SeaInn, removed Stewart, the general contractor's agent. Cope and Thrash's activities, as well as their settlement agreement with Stewart, reflect that, upon their removal of Stewart, Cope and Thrash then became the agents of the general contractor, Madison Homes. *See generally Associated Dealers Supply Inc. v. Miss. Roofing Supply Inc.*, 589 So. 2d 1245, 1247-48 (Miss. 1991) (discussing whether, based on the activities of an employee, the co-owner of a building

---

[1] *See also Williams v. Ellis*, 176 So. 3d 133, 138 (¶12) (Miss. Ct. App. 2015) ("Quantum meruit recovery is a contract remedy which may be premised either on express or implied contract, and a prerequisite to establishing grounds for quantum meruit recovery is the claimant's reasonable expectation of compensation." (quoting *In re Wilhite*, 121 So. 3d 301, 305 (¶8) (Miss. Ct. App. 2013))).

project became the project's general contractor).[2] The general contractor's interests in the project and its right to performance of the subcontractors were conveyed to Cope and Thrash, the owners, upon their removal of Stewart as the general contractor's agent and upon their assumption of the general contractor's obligations, duties, and rights to performance. *See generally Aladdin Constr.*, 914 So. 2d at 175-79 (¶¶11-20) (finding genuine issues of material fact as to whether a company engaged by a mall owner acted as the owner's agent).

¶27. In accordance with the subcontract, Thrasher Construction submitted invoices for payment of the work it performed. Instead of paying Thrasher Construction the amount due for its completed performance, the owners (Cope and Thrash), acting as the general contractor's agents, hired the son of one of the owners (Thrash) to complete the work. *See id.* (discussing whether an agency relationship existed between a mall owner and the company hired as its construction manager).[3]

¶28. After a review of the record and applicable caselaw, I would affirm the jury's verdict

---

[2] *See also Aladdin Constr.*, 914 So. 2d at 175-76 (¶11) (citing *Brogno v. W&J Assocs. Ltd.*, 698 A.2d 191, 194 (R.I. 1997), for the propositions that a construction manager acts as a mere agent for the owner to perform most of the work and that the mere label of construction manager will not determine a party's legal status); *Summerall Elec. Co. v. Church of God at Southaven*, 25 So. 3d 1090, 1095-96 (¶¶19, 26-27) (Miss. Ct. App. 2010) (discussing apparent authority and stating that the key to determining whether someone is an agent or an independent contractor is whether the person acts on the principal's behalf and is subject to the principal's control).

[3] *See generally Associated Dealers Supply*, 589 So. 2d at 1248 (finding that, to determine a co-owner's status, the chancellor should have looked at the co-owner's activities isolated from its ownership, and if shown to be the activities of a contractor, then the chancellor should have determined the co-owner's status to be that of a contractor); *Bailey v. Worton*, 752 So. 2d 470, 472 (¶1) (Miss. Ct. App. 1999) (finding that the general contractor was the owner's implied agent because the owner delegated authority for the construction of a house to the general contractor).

12

awarding Thrasher Construction $69,290 based upon a quantum meruit theory of recovery.

As a result, I concur in part and dissent in part from the majority's opinion.

**FAIR AND JAMES, JJ., JOIN THIS OPINION; WILSON AND GREENLEE, JJ., JOIN THIS OPINION IN PART.**