# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01627-COA

**BEULAH M. THIBODEAUX**                                                    **APPELLANT**

**v.**

**THE HUMANE SOCIETY OF SOUTH                                APPELLEE
MISSISSIPPI, A MISSISSIPPI NON-PROFIT
CORPORATION**

DATE OF JUDGMENT:                07/14/2016
TRIAL JUDGE:                           HON. DALE HARKEY
COURT FROM WHICH APPEALED:   JACKSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:      DAVID MICHAEL HUGGINS
                                             ZACHRY W. TURNER
                                             G. KEVIN HOWELL
ATTORNEY FOR APPELLEE:         PETER C. ABIDE
NATURE OF THE CASE:              CIVIL - PERSONAL INJURY
DISPOSITION:                          AFFIRMED - 12/05/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., WILSON AND WESTBROOKS, JJ.

### LEE, C.J., FOR THE COURT:

¶1.     Beulah M. Thibodeaux filed suit against the Humane Society of South Mississippi after being bitten by a dog previously in the Humane Society's custody. The trial court granted summary judgment in favor of the Humane Society. In this appeal, we must determine whether the trial court erred in doing so. Finding summary judgment was properly granted in favor of the Humane Society, we affirm.

## PROCEDURAL HISTORY

¶2.     On April 11, 2013, Thibodeaux was bitten by a dog owned by Derek Paul Smith and

Danette Smith-Petitt (the Smiths). Thibodeaux initially filed suit against the Smiths, but later amended her complaint to include the Human Society and the City of Biloxi (the City). The City was eventually dismissed due to Thibodeaux's failure to properly serve notice under the Mississippi Tort Claims Act. The Humane Society filed a motion for summary judgment, which the trial court granted. Thibodeaux now appeals, asserting that the trial court erred in granting summary judgment for two reasons: (1) the Humane Society owed her a duty of care under the dangerous-propensity rule, and (2) she is a third-party beneficiary to the contract between the Humane Society and the City.

**FACTS**

¶3. On February 12, 2013, Amanda Herndon, an officer with the City's animal-control office, responded to a call concerning a dog bite in an area of town near Irish Hill Drive and Travia Avenue. This area was known to be populated by homeless persons and was referred to in the record as a "homeless camp." Herndon completed a "bite report" noting that the dog bit a female on the left leg. Per an agreement between the City and the Humane Society, Herndon transported the dog to the Humane Society for a ten-day quarantine. The intake form completed by Herndon indicated that the dog's owner was unknown at the time. The bite report and the intake form were attached to the dog's cage during the quarantine period.

¶4. Crystal Cornelson was the Humane Society's animal-control supervisor. In her deposition, Cornelson stated that she observed the dog during the quarantine period and had no problems with it. After the quarantine period ended, the dog was released to his owner, Dennis Lanter. Although Herndon had testified in her deposition that Lanter was homeless,

Cornelson stated that she was unaware of this since Lanter gave the Humane Society an address and phone number. In response to a question asking whether she attempted to verify addresses before releasing animals to their owners, Cornelson responded, "No, sir. All we have is their ID that we get from them, and the address that they give us." Cornelson also testified that the dog would not have been released if the intake form indicated the dog was dangerous and should not be released to Lanter. Cornelson further stated that it was the animal-control officer's responsibility to notify them if a dog should not be released.

¶5. On March 27, 2013, Herndon and Candice Jones, an officer with the City's animal-control office, conducted a follow up with Lanter regarding the dog. According to Jones and Herndon, the dog was chained to a tree at the homeless camp. Since this violated a city ordinance, Herndon gave Lanter the option to complete an owner-surrender form in order to avoid paying a fine. Lanter agreed, and the dog was then transported to the Humane Society. The form indicated that Lanter had until April 3, 2013, to revoke his voluntary surrender and retrieve the dog; otherwise the dog would remain at the Humane Society. Both Jones and Herndon indicated that while transferring the dog to the Humane Society, the dog was acting aggressively.

¶6. Portions of another Humane Society employee's deposition are in the record. According to Tara High, the purpose of the ten-day quarantine is to determine whether a dog that has bitten someone shows symptoms of rabies. And the animal must be released back to the owner after the ten days "if the owner requests the animal back, unless we are told not to do so."

¶7.    Lanter returned to the Humane Society on March 29, 2013, to retrieve his dog.  The record includes a form titled "Return to Owner/Guardian Contract."  The form contains Lanter's name, address, and the dog's information.  Below that information, the form states, "I certify that I am the legal owner of the above described animal that I am claiming.  I acknowledge that [the Humane Society] has been the housing agent only for the animal since it was impounded and has no responsibility for the health or condition of the animal."  At some point before Thibodeaux was bitten on April 11, 2013, Lanter gave the dog to the Smiths.

**STANDARD OF REVIEW**

¶8.    The grant of a motion for summary judgment is reviewed de novo.  *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013).  We view the evidence "in the light most favorable to the party against whom the motion has been made."  *Id*.

> Summary judgment is appropriate and shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to [a] judgment as a matter of law. Importantly, the party opposing summary judgment may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in [Mississippi Rule of Civil Procedure 56], must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, will be entered against him.

> [The Mississippi Supreme] Court has explained that in a summary judgment hearing, the burden of producing evidence in support of, or in opposition to, the motion is a function of Mississippi rules regarding the burden of proof at trial on the issues in question.  The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to [a] judgment as a matter of law.  The movant bears the burden of production if, at trial, he would bear the burden of proof on the issue raised.  In other words, the movant only bears the burden of

4

production where [the movant] would bear the burden of proof at trial. Furthermore, summary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 88-89 (¶¶10-11) (internal quotation marks, emphasis, and citations omitted).

## DISCUSSION

### I. Dangerous-Propensity Rule

¶9. Thibodeaux first argues that there were genuine issues of material fact as to the Humane Society's ownership of the dog and its employee's knowledge of the dog's dangerous propensities. To hold a dog owner liable for personal injuries caused by the dog,

there must be some proof that the animal has exhibited some dangerous propensity or disposition prior to the attack complained of, and, moreover, it must be shown that the owner knew or reasonably should have known of this propensity or disposition and reasonably should have foreseen that the animal was likely to attack someone.

*Poy v. Grayson*, 273 So. 2d 491, 494 (Miss. 1973).

¶10. Thibodeaux contends that the Humane Society became the legal owners of the dog after Lanter surrendered it and should never have released the dog to Lanter the second time. Lanter did complete the owner-surrender form where he transferred his ownership of the dog to the Humane Society. To be clear, the dog was not taken back to the Humane Society due to another bite incident; rather, it was Lanter's choice to surrender the dog to the Humane Society. However, Lanter was given the opportunity to retrieve the dog before April 3, 2013, which Lanter did on March 29, 2013. According to testimony and documentary evidence, the Humane Society was within its right to release the dog to its original owner unless

otherwise instructed by the animal-control officers. Testimony indicates the animal-control officers never instructed the Humane Society not to release the dog to its owner. Clearly, the Humane Society was aware of the dog's dangerous propensities since the dog was first transported to the Humane Society on February 12, 2013, after biting someone. But the Humane Society did not have ownership of the dog at the time it bit Thibodeaux. As a result, we find the Humane Society's motion for summary judgment was properly granted.

## II. Third-Party Beneficiary

¶11. Thibodeaux also argues that she was a third-party beneficiary to the contract between the Humane Society and the City. "Third-party beneficiary status arises from the terms of the contract." *Simmons Housing Inc. v. Shelton*, 36 So. 3d 1283, 1286 (¶10) (Miss. 2010). An entity may be considered a third-party beneficiary if:

> (1) the contract between the original parties was entered for that person's or entity's benefit, or the original parties at least contemplated such benefit as a direct result of performance; (2) the promisee owed a legal obligation or duty to that person or entity; and (3) the legal obligation or duty connects that person or entity with the contract.

*Id.* The supreme court has provided the following for determining third-party-beneficiary status:

> (1) When the terms of the contract are expressly broad enough to include the third party either by name as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

*Id.* Furthermore, "[a] third-party beneficiary also must benefit directly from the contract. . . . A mere incidental or consequential benefit is insufficient." *Id*. at 1286-87 (¶11).

6

¶12.    The agreement between the Humane Society and the City states in pertinent part:

> Bite Animals.  The Humane Society . . . agrees to accept from the animal control officers of the City of Biloxi, Mississippi, those animals alleged to have bitten a person, as provided in this Agreement.  For every such animal delivered, the City of Biloxi, Mississippi, agrees to deliver to the Humane Society . . . a police report describing the bite incident within forty-eight (48) hours of delivery of the animal.  The Humane Society . . . will hold said animals for a period of not more than 10 days after which time the bite case shall have been resolved or the impounding animal control agency shall take charge of the care of the animal. . . .  Disposition of unclaimed animals after the requisite holding period is left to the sole discretion of the Humane Society . . . .
>
> The City . . . further agrees to indemnify the Humane Society . . . from any responsibility or liability resulting from the physical condition and/or actions of said animals, both during the holding period and after their release, if any.
>
> If the animal is surrendered by the owner, the City of Biloxi shall be responsible for the costs of the ten (10) day quarantine and necessary medical treatments.  If the animal is returned to the owner, then the owner shall be responsible for the costs incurred for the ten (10) day quarantine and necessary medical treatments.  The cost for a ten (10) day bite case quarantine is twelve dollars and 50/100 ($12.50) per day.  Refer to Section 3 regarding payment.

The language of the agreement between the Humane Society and the City clearly states the agreement is between those two entities.  There is also no language identifying persons such as Thibodeaux as a member of a specified class of beneficiaries.  There is no language reflecting the intent of either party to include anyone else as a beneficiary to the agreement.  We find this issue without merit.

¶13.    **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**